[L. A. No. 20609. In Bank. Aug. 18, 1950.]

PASADENA HOSPITAL ASSOCIATION, LTD. (a Nonprofit Corporation), Appellant, v. COUNTY OF LOS ANGELES, Respondent.

Gibson, Dunn & Crutcher, Bert A. Lewis and Samuel O. Pruitt, Jr., for Appellant.

Harold W. Kennedy, County Counsel, and Andrew O. Porter, Deputy County Counsel, for Respondent.

SPENCE, J.—This action for the recovery of taxes paid under protest for the tax year 1946-1947 likewise involves the construction of the recently enacted welfare exemption law (Cal. Const., art. XIII, § 1c; Rev. & Tax. Code, § 214), in relation to hospital property. Accordingly it was consolidated for hearing with six other hospital cases as noticed in an opinion this day filed, *Cedars of Lebanon Hospital* v. *County of Los Angeles,* L. A. No. 20610, *ante,* p. 729 [221 P.2d 31].

Plaintiff here framed its complaint to allege two causes of action for application of the welfare exemption: (1) as to the portion of the property used for a nurses' home and for a nurses' school operated in connection with the hospital; and (2) as to all its property on the premise of irrevocable dedication to exempt purposes. (Rev. & Tax. Code, § 214(6).) Defendant interposed a general demurrer, which was sustained without leave to amend, on the ground that it affirmatively appeared from the complaint that "none of [plaintiff's] property was irrevocably dedicated to the [required] purposes . . . on March 4, 1946 [the tax day in question]." From the judgment accordingly entered in defendant's favor, plaintiff has appealed.

Though as appears from our opinion in the consolidated hospital cases, *Cedars of Lebanon Hospital* v. *County of Los Angeles,* L. A. No. 20610, *ante,* p. 729 [221 P.2d 31] the tax exempt status of the portion of the hospital property used for a nurses' home and for a nurses' school was sustained, such consideration is of no avail to plaintiff unless plaintiff qualified in all other respects as an institution entitled to claim the welfare tax exemption on the first Monday in March, 1946—concededly March 4, 1946. Section 214, subdivision (6), of the Revenue and Taxation Code provides that property used exclusively for hospital purposes is exempt from taxation if "[t]he property is irrevocably dedicated to religious, charitable, scientific, or hospital purposes and upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for religious, hospital, scientific, or charitable purposes."

Plaintiff argues these alternative grounds as constituting its compliance with the quoted statutory requirement of irrevocable dedication: (1) its articles of incorporation prior to the 1946 amendment thereof as interpreted in the light of its long-continued use of its property for hospital purposes; (2)

so-called amalgamation with a hospital trust; and (3) express amendment in 1946 of its articles of incorporation subsequent to the adoption of the welfare exemption law. Defendant, on the other hand, challenges the efficacy of any of these factors to effect the tax exemption here sought. An examination of the record in the light of applicable legal principles shows defendant's position to be well taken and sustains the propriety of the trial court's ruling denying plaintiff's exemption claims.

According to its complaint, plaintiff was organized as a nonprofit corporation in 1892 and has operated exclusively as such ever since. For many years it has been exempt from all federal and state income, corporation, franchise, and social security taxes as a charitable hospital. Plaintiff's assets stem from these two sources: (1) the major part from charitable gifts, and (2) the balance from the excess of receipts over disbursements, which has been realized in certain of its prior years' operations and invested in hospital property. Plaintiff has never made any distribution of assets to any individual, and it has never used any asset except in furtherance of the charitable hospital purpose for which it was organized.

In 1932, in satisfaction of a legacy of $2,000,000, the executors of the estate of Henry E. Huntington distributed funds to certain trustees, in trust however, to use a portion thereof for the purpose of establishing a memorial hospital and to use the remainder as an endowment fund to invest and reinvest so that it would yield an income for the perpetual maintenance of the hospital. In 1936, the directors and members of plaintiff hospital association accepted a proposal of the trustees under the Huntington will that the hospital owned by plaintiff be conducted thereafter as the "Collis P. and Howard Huntington Memorial Hospital"—becoming *the* hospital contemplated by the said testator and operating under the trust. At that time all the members and directors of plaintiff hospital association resigned, and the trustees of the aforesaid trust became the only directors and members thereof. None of the trustees has ever contributed any property to plaintiff or had ever been a member or director of plaintiff prior to the "amalgamation." "None of [the] trustee members and directors have any basis for claiming any interest in plaintiff's property, should it dissolve." Since the "amalgamation" in 1936, "the entire hospital property has been

operated as one unit, some of it being owned by the trust and some of it being owned by plaintiff."

Plaintiff's governing articles of incorporation are recited in full as "Exhibit A," attached to the complaint. Certain provisions thereof pertinent to the question of dedication are as follows:

"KNOW ALL MEN BY THESE PRESENTS: That we, the undersigned, citizens and residents of the State of California, do hereby voluntarily associate ourselves together for the purpose of incorporating under the laws of the State of California a *private* corporation.

"AND WE DO HEREBY CERTIFY:

. . . . . . . . . . . . . . . .

SECOND—(A) That the *objects* and *purposes* for which this corporation are (is) formed are:

"(1) To establish, maintain, and carry on within the County of Los Angeles, State of California, a hospital for the sick and injured, and for that purpose *or any other lawful purpose where pecuniary profit is not the object thereof,* to purchase, lease . . . (etc.)

. . . . . . . . . . . . . . . .

"(7) To convey all or any portion of the corporate property *in trust for such lawful purposes as the Board of Directors may deem advisable*; to receive endowments and to invest the same.

. . . . . . . . . . . . . . . .

"(9) To do and perform every act and thing necessary to carry out the foregoing purposes and powers in other states and jurisdiction, *which like corporations* or corporations organized for *social,* charitable or religious purposes under the laws of such states and jurisdictions may lawfully do or cause to be done therein.

"(10) To do each and every thing necessary, appropriate or adapted to carry into effect any and all of the foregoing purposes and powers, or to attain *any one or more of the objects* herein enumerated, or which shall at any time appear conducive to or expedient for the protection or benefit of this Corporation, and, generally, to do any act, or transact any business in connection with said purposes and powers which a copartnership or natural person could do or exercise, and which now or hereafter may be authorized by law; *to carry on any other lawful business, enterprise, or activity whatsoever* which may seem capable of being carried on in connection with

the foregoing, or calculated, directly or indirectly, to promote the interests of this Corporation or *to enhance the value of its properties.*

"(B) This is a corporation which does not contemplate pecuniary gain or profit to the members thereof. No part of the net earnings of this corporation shall inure to the benefit of any private member or individual, and no substantial part of the activities of this corporation shall be devoted to carrying on propaganda or otherwise attempting to influence legislation." (Emphasis added.)

After the welfare exemption became a part of the Revenue and Taxation Code, plaintiff, on December 21, 1945, adopted a resolution amending the foregoing section "B" to read as follows:

"(B) This corporation has no capital stock, is not formed for profit, and is a corporation which does not contemplate pecuniary gain, profit or dividends to the members thereof. No part of the net earnings of this corporation shall inure to the benefit of any member or individual, and no part of the activities of this corporation shall be devoted to carrying on propaganda or otherwise attempting to influence legislation. *The property of this corporation is irrevocably dedicated to charitable, scientific, educational and hospital purposes, and upon the abandonment, liquidation or dissolution of this corporation said property shall not inure to the benefit of any private person but shall be distributed to a fund, foundation or corporation organized and operated for hospital, scientific, educational or charitable purposes, or to the United States of America, the State of California, or any political subdivision thereof."* (Emphasis added.)

This amendment received the consent of all the members of plaintiff on March 1, 1946, but was not indorsed as filed in the office of the Secretary of State until March 14, 1946.

As will hereinafter appear, we have concluded that the 1946 amendment to plaintiff's articles of incorporation did not take effect until after the first Monday in March, 1946. It therefore becomes necessary to determine whether upon that date and under its then effective articles of incorporation, plaintiff's properties were "irrevocably dedicated" to exempt purposes within the meaning of the welfare exemption law.

The term "irrevocably dedicated" appears to be new to tax law, and neither counsel nor independent research has disclosed any case wherein that phrase has been construed. Nevertheless, one of the specified conditions for

exemption is that "the property is irrevocably dedicated" to exempt purposes; and that provision, like other provisions of the welfare exemption law, must be given a strict but reasonable construction. (See *Cedars of Lebanon Hospital* v. *County of Los Angeles,* L. A. No. 20610, *ante,* p. 729 [221 P.2d 31].)

It will be noted that the requirement that property be "irrevocably dedicated to . . . hospital purposes" or other exempt purposes is concerned with *purposes* rather than with *uses.* The distinction between the two concepts is important here. The question of present uses, rather than of ultimate purposes, to which particular pieces or portions of property were being put was the main and all-important consideration in the aforementioned consolidated hospital cases (*Cedars of Lebanon Hospital* v. *County of Los Angeles,* L. A. No. 20610, *ante,* p. 729 [221 P.2d 31]) in determining whether each of such pieces or portions of the property was then entitled to exemption. The additional but distinct condition of irrevocable dedication does not appear to be concerned with present uses as distinguished from ultimate purposes, and it seems clear that the requirement of irrevocable dedication to exempt purposes could, in itself, be met before any actual use is made of any of the property, and that it would not necessarily be affected by any diversion, through sale or otherwise, of any particular piece or portion of the property to nonexempt uses provided the proceeds of such sale or nonexempt uses are irrevocably dedicated to exempt purposes. In other words, while the present exclusive use for exempt purposes is the primary condition to be met in order to obtain exemption for any particular piece or portion of the property at any given time, it would be wholly unreasonable to construe the further condition of irrevocable dedication to exempt purposes as requiring that the particular piece or portion of the property should, in some manner, be frozen permanently and irrevocably into such exclusive use. This reasoning is in line with that found in an opinion given by the office of the attorney general, where it was said: "In our opinion, however, the statute does not require that the particular parcel of property be dedicated, but rather that the property or its proceeds be dedicated. For example, a church is irrevocably dedicated to religious purposes even if the members reserve the right to sell the property and to use the proceeds for the purpose of constructing a new church in another location which is more suitable to their purposes." (8 Opin. Att. Gen. [1946] 72, 75.)

In the present case, we are not called upon to determine what may constitute irrevocable dedication under all circumstances, for we are satisfied that there was no irrevocable dedication to exempt purposes here. We are of the opinion that this requirement of irrevocable dedication is ordinarily to be determined by ascertaining the powers of the owner with respect to its assets, including its properties and the proceeds thereof. And where, as here, the extent of such powers can be ascertained only from plaintiff's articles of incorporation, and such articles permit not only the present use for, but also the ultimate and permanent diversion of all of plaintiff's assets to, nonexempt purposes, then the requirement of irrevocable dedication to exempt purposes cannot be said to have been satisfied under any construction of said subdivision (6) of section 214 of the Revenue and Taxation Code.

As above indicated, plaintiff's articles of incorporation, which fixed the extent of its powers on March 4, 1946, conferred such broad powers and enumerated such nonexempt purposes as to preclude the successful assertion of the claim that plaintiff's assets were irrevocably dedicated to exempt purposes on that date. Thus, plaintiff was authorized to permanently divert all of its property to *any* lawful nonprofit purpose (Article Second (A)(1)), though the welfare exemption does not extend to *all* lawful nonprofit purposes and, in fact, expressly excludes certain ones such as fraternal, lodge, or social purposes unless "clearly incidental" in nature (Rev. & Tax. Code, § 214(5)); its directors were empowered to convey all or part of its property in trust for *any* lawful purposes which they might deem advisable (Article Second (A) (7)); in carrying out its broad purposes, plaintiff's powers were likened to those of corporations organized for *social* as well as other purposes (Article Second (A)(9)); and finally, plaintiff was vested with authority "to carry on any other lawful business, enterprise or activity whatsoever" which would "enhance the value of its properties" (Article Second (A)(10)). As a restricting factor on these provisions, Article Second (B) prior to the 1946 amendment purported to be no more than a limitation to nonprofit activities—which, of course, may or may not be "charitable" or "hospital" in nature.

Plaintiff argues, however, that its articles of incorporation must be interpreted in the light of methods of its operation as a nonprofit, charitable hospital since the date of its organiza-

tion more than 50 years ago and, by such standard, there has been an irrevocable dedication of its property to hospital purposes. While the fact that plaintiff is operating, and has for many years operated, as a nonprofit charitable hospital might be considered in determining its status with respect to tort liability under the authorities cited by plaintiff (*Stonaker* v. *Big Sisters Hospital,* 116 Cal.App. 375, 378 [2 P.2d 520]; *Armstrong* v. *Wallace,* 8 Cal.App.2d 429, 432-433 [47 P.2d 740]), it does not necessarily follow that such fact would be of any controlling significance in determining its status with respect to tax exemption. (Fletcher, Cyclopedia Corporations, Perm. Ed., vol. 10, ch. 54, § 4932, p. 626; anno. 119 A.L.R. 1012, 1013, 1022; *La Societe Francaise* v. *California Emp. Com.,* 56 Cal.App.2d 534, 543 [133 P.2d 47]; *William Budge Memorial Hospital* v. *Maughan,* 79 Utah 516 [3 P.2d 258, 261, 13 P.2d 1119].) But in any event, the question under discussion is not whether plaintiff may be classified as a nonprofit, charitable hospital but whether its property has been "irrevocably dedicated" to exempt purposes. On this last-mentioned question, plaintiff's manner of operation and plaintiff's use, past or present, of its properties are wholly immaterial. The sole consideration in determining the question of irrevocable dedication of its properties is that of plaintiff's powers with respect thereto. It seems entirely clear that plaintiff's broad powers with respect to nonexempt purposes were not lost through nonuse over a period of years, and that the continued existence of such powers was fatal to its claim of irrevocable dedication to exempt purposes on the tax date in question. In this connection it is futile for plaintiff to cite section 9505 of the Corporations Code, which permits the attorney general to institute proceedings against a nonprofit corporation if "it may fail to comply with trusts which it has assumed or may depart from the general purposes for which it is formed." It does not appear that the permanent diversion by plaintiff of all the corporate assets to certain nonexempt purposes would constitute a violation of any trust or a departure from the broad purposes specified in its articles.

Nor does plaintiff's so-called amalgamation with the Huntington trust strengthen its position on the point involved. It is not shown by the record that any change was made thereby in plaintiff's corporate powers; nor does it appear that there was any conveyance of plaintiff's property to the trust. Rather, in consequence of the new relationship as

disclosed by plaintiff's complaint, the trustees of the Huntington trust merely became the directors of plaintiff hospital association, the name was changed to the "Collis P. and Howard Huntington Memorial Hospital," and plaintiff's former directors, upon resigning their office, adopted a resolution announcing the "surrender [of] their responsibilities, assured that the new custodians [would] continue to develop the hospital in accordance with the plans and services of those who have established and carried forward this important and generously supported institution." Though "the entire hospital property has [since] been operated as one unit," it further appears that plaintiff did not relinquish ownership of its property upon consummation of such united undertaking. In the light of these related circumstances, plaintiff's amalgamation with the trust cannot be viewed as effecting an irrevocable dedication of plaintiff's own corporate assets within the meaning of the welfare exemption law.

There finally remains the matter of plaintiff's qualification for the welfare tax exemption by reason of the above-quoted 1946 amendment to its articles of incorporation (Article Second (B)). In challenging the effectiveness of such amendment, defendant properly objects at the outset to its timeliness as a consideration for the tax year 1946-1947. Pursuant to section 8, article XIII, of the Constitution, and section 441 of the Revenue and Taxation Code, each taxpayer is required to file a declaration of his property as of noon on the first Monday in March, at which time the tax status of property becomes fixed for the tax year. It is conceded that in the year 1946 this determinative date was March 4, or ten days before the amendment of plaintiff's articles of incorporation was filed with the Secretary of State. By section 605 (d) of the Civil Code (now Corp. Code, § 9305), a "nonprofit corporation may amend its articles of incorporation . . . in the same manner and with the same effect as a stock corporation under the general corporation law existing at the time thereof." So pertinent then is section 362 (b) of the Civil Code (now Corp. Code, § 3673) in providing that "[t]he certificate [of amendment] shall be submitted to the Secretary of State, who shall file the same and put an indorsement of filing thereon if he find that it shows a compliance with the provisions of the law [and] [t]hereupon, the articles of incorporation shall be deemed amended in accordance with such certificate, . . ." This is tantamount to a provision that the amendment does not become effective until the date of

filing. (See Ballantine & Sterling, California Corporation Laws, 1949 Ed., § 319, p. 391; Fletcher, Cyclopedia Corporations, Perm. Ed., vol. 7, ch. 43, § 3721, p. 891.) Accordingly, plaintiff's belated filing of the 1946 amendment precluded it from accomplishing its purpose of obtaining tax exemption for the tax year in question. In view of this conclusion it becomes unnecessary to consider defendant's further objections to the effectiveness of the 1946 amendment.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.