[Civ. No. 19267.   Second Dist., Div. Two.   Mar. 26, 1953.]

GOODWILL INDUSTRIES OF SOUTHERN CALIFORNIA (a Corporation), Appellant, v. COUNTY OF LOS ANGELES et al., Respondents.

Snyder & Fletcher and Owen E. O'Neil for Appellant.

Harold W. Kennedy, County Counsel, Arvo Van Alstyne, Deputy County Counsel, Ray L. Chesebro, City Attorney (Los Angeles), and Louis A. Babior, Deputy City Attorney, for Respondents.

FOX, J.—The trial court sustained a demurrer without leave to amend to plaintiff's second amended complaint. A judgment of dismissal was accordingly entered. Plaintiff appeals from this judgment.

Plaintiff is a nonprofit, charitable welfare corporation. It is exempted from federal revenue tax and state income and sales tax. Plaintiff is engaged in collecting castoff personal property, reconditioning it and selling it through the stores which the corporation maintains and operates. The Goodwill Industries exist for the purpose of employing handicapped, aged, and needy persons in this process and thereby assisting in training its employees for independent living and self-support. All income from the sale of plaintiff's merchandise goes to its workers in wages after deducting the cost of operations. Capital investment in buildings and equipment comes from contributions of outside supporters.

This action is (1) to recover the 1949-1950 taxes, paid under protest, on plaintiff's stores which it alleges are necessary for the disposition of its reconditioned merchandise, and (2) for a declaration that its property is exempt from taxation. Plaintiff's theory is that it comes within the welfare exemption law. (Cal. Const., art. XIII, § 1c; Rev. & Tax. Code, § 214.) In order to be entitled to the benefit of such tax exemption, plaintiff must show that its property is "irrevocably dedicated" to exempt purposes.

Section 214 of the Revenue and Taxation Code* provides that property used exclusively for religious, hospital, scientific or charitable purposes, and owned and operated by a corporation organized and operated for such purposes, is exempt from taxation if the property is "irevocably dedicated" to these purposes and upon liquidation, etc., will not inure to the benefit of any private person but only to an organization which is organized and operated for such purposes. It thus becomes necessary to determine whether plaintiff's property is irrevocably dedicated to the aforesaid purposes. We must, therefore, examine plaintiff's articles of incorporation to ascertain the purposes to which plaintiff may devote its property. (*Pasadena Hospital Assn.* v. *County of Los Angeles,* 35 Cal.2d 779, 786 [221 P.2d 62]; *Moody Institute of Science* v. *County of Los Angeles,* 105 Cal.App.2d 107, 109 [233 P.2d 51].) These articles provide as follows:

"That the purposes for which said association is formed and incorporated are *educational, industrial,* spiritual and benevolent; to secure the Americanization of the foreign born; to provide for the educational and industrial welfare of the poor and neglected by the inspiration of *industrial education* and mental and spiritual uplift, and by the encouragement of thrift and helpful conditions of living and labor, to endeavor to prevent pauperism, and by means of Christian cooperation to relieve the temporary distresses of the unfortunate; *to build, equip, and operate trade schools and workshops and allied and coordinate institutions, to establish and conduct industries, stores* and medical clinics, to carry on any and all kinds of welfare and benevolent work among the poor and needy; to receive by gift, devise, or purchase and otherwise acquire, to own, hold and enjoy, to sell, lease,

---

*The pertinent provisions of section 214 on the tax lien date read:
"Property used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations, or corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation if: . . .

"(6) The property is irrevocably dedicated to religious, charitable, scientific, or hospital purposes and upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for religious, hospital, scientific, or charitable purposes; . . .

"The exemption provided for herein shall be known as the 'welfare exemption.' This exemption shall be in addition to any other exemption now provided by law. This section shall not be construed to enlarge the college exemption or to extend an exemption to property held by or used as an educational institution of less than collegiate grade."

give and otherwise encumber any and all and every kind or kinds of real and personal property, and *to carry on any and all operations necessary or convenient in connection with any of its objects or the transaction[s] of any of its business."* (Italics added.)

In determining whether the purposes stated in plaintiff's articles constitute an irrevocable dedication of its property to exempt purposes "a strict but reasonable construction" must be given to the language used to the end that a tax exemption may be neither enlarged nor extended beyond "the plain meaning" of such language. (*Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 Cal.2d 729, 736 [221 P.2d 31, 15 A.L.R.2d 1045].) In this connection it should also be pointed out that the fact that plaintiff is a worthy institution whose activities are of great value to the people who are related to its operations and that it contributes to the public welfare, is immaterial here because it, like other private owners of property, has the burden of showing that it "clearly" comes within the terms of the exemption. (*Cedars of Lebanon Hospital* v. *County of Los Angeles, supra.*) It is thus to be noted that the requirement, that property be irrevocably dedicated to exempt purposes in order to be relieved of taxation, is concerned with *purposes* rather than *uses.* Hence the crucial factor in such an exemption is not the past or present use of the property but the ultimate purpose to which it is dedicated. (*Pasadena Hospital Assn.* v. *County of Los Angeles, supra,* p. 785.) Consequently, "[t]he sole consideration in determining the question of irrevocable dedication of its properties is that of plaintiff's powers with respect thereto." (*Pasadena Hospital Assn.* v. *County of Los Angeles, supra,* p. 787.) So, "[i]f the articles of incorporation permit not only a present use but also the ultimate and permanent diversion of its assets to nonexempt purposes no exemption may be allowed." (*Moody Institute of Science* v. *County of Los Angeles, supra,* p. 109.)

Applying these principles, it is clear that plaintiff was not entitled to exemption from taxation.

An examination of the quoted section of plaintiff's articles of incorporation discloses that its purposes are, among others, "educational" and "industrial"; to provide "industrial education"; "to build, equip, and operate trade schools and workshops and allied and coordinate institutions, to establish and conduct industries, [and] stores . . . ," and "to carry on any and all operations necessary or convenient in connec-

tion with any of its objects or the transaction of any of its business.'' The plain meaning of this language makes it clear that plaintiff could, in the tax year here involved, or at any later period, without violating its charter, *build, equip,* and *operate* schools of less than collegiate grade, such as, for example, trade schools, and could devote all of the property upon which it presently seeks exemption to any or all of such purposes. This would be contrary to the express provisions of section 214, Revenue and Taxation Code, and the principles enunciated in the Pasadena Hospital case and the holding in *Moody Institute of Science* v. *County of Los Angeles, supra.*

In an effort to escape the effect of these decisions plaintiff emphasizes that the present and intended future use of all of the subject properties is purely and exclusively charitable. This, however, does not provide any legal basis for a conclusion that the property is irrevocably dedicated to exempt purposes during plaintiff's corporate life. The identical contention was made by the Pasadena Hospital. It was fortified by a background of more than 50 years' exclusive use as a charitable hospital. It was, however, squarely rejected by the Supreme Court. (*Pasadena Hospital Assn.* v. *County of Los Angeles, supra,* pp. 786-787.)

Plaintiff also contends that the Pasadena Hospital and Moody Institute cases are inapplicable on the theory that these cases dealt only with corporations which had ''extra curricular nonexempt powers,'' that is, nonexempt powers which were ''apart from or in addition to the general purposes for which they were formed.'' From this premise plaintiff argues that it has no such extracurricular powers, and that its property should therefore be treated as irrevocably dedicated exclusively to exempt purposes.

A careful reading of these cases fails to disclose anything indicating that the court drew such a distinction as that contended for by plaintiff. If any such distinction were possible, however, plaintiff's argument would result in a *non sequitur* for plaintiff's nonexempt powers are clearly included among, and constitute in part, its *general and primary* powers and purposes. As in the Moody Institute case, there is nothing in plaintiff's articles of incorporation which in any way limits or restricts its nonexempt purposes (e.g., educational powers) or subordinates them to the status of powers which are merely incidental to a program of charitable rehabilitation of the handicapped or aged. Plaintiff's alleged intent to

employ its nonexempt powers in such a restricted manner does not cure this deficiency in its articles of incorporation. Plaintiff attempts to use the Cedars of Lebanon case in support of its argument. There the property under consideration for tax exemption was used for a nurses' school which was held to be a necessary and incidental function of a modern hospital, and thus an exempt *use* of property for hospital purposes. That case is not applicable here because the present issue relates not to *use* but to *purposes* as expressed in plaintiff's articles of incorporation. Therefore, since plaintiff's powers are not limited to exempt purposes, but expressly include also taxable purposes, its property is not entitled to tax exemption. (*Pasadena Hospital Assn.* v. *County of Los Angeles, supra*; *Moody Institute of Science* v. *County of Los Angeles, supra.*)

Plaintiff's third cause of action is based upon the theory that even if its articles of incorporation fail to meet the irrevocable dedication requirement, nevertheless the city and county are precluded by estoppel and laches from urging such noncompliance as a defense against the action for recovery of the 1949 taxes here involved. As a factual foundation for the attempted application of these principles, plaintiff alleged that after the adoption by the Legislature in 1945 of the welfare exemption sections of the Revenue and Taxation Code plaintiff amended its articles of incorporation for the purpose of establishing its eligibility for such exemption. In 1947 plaintiff filed with the Los Angeles County assessor its amended articles together with other documents for the purpose of obtaining exemption from taxes for that year. The assessor approved plaintiff's showing and allowed the welfare exemption to substantial portions of its property, other than the properties here involved on which exemption was denied because of its use for nonexempt purposes. The same procedure with the same results followed for the years 1948, 1949 and 1950. This action was filed in May, 1950.

It is apparent that plaintiff's claim of estoppel is predicated upon the erroneous approval by the assessor of plaintiff's showing of irrevocable dedication for the four years prior to the decisions in the Pasadena Hospital and Moody Institute cases. In order to avail itself of this error, plaintiff argues such approval "constitutes a valid and irrefutable finding of fact" that its property " 'is' irrevocably dedicated as required by the statute." This proposition is not sound for implicit in it is the idea that the county assessor acts at his

peril at the outset under new legislation granting new property tax exemptions, and to the perpetual prejudice of the taxing entities for whom he acts, in interpreting and applying the exemption prior to judicial interpretation thereof; that after once allowing the exemption, he, together with the taxing entities, are thereafter powerless to change position, irrespective of light cast thereon by subsequent judicial decisions interpreting the pertinent statutes, without first giving notice to any taxpayers who may be affected thereby sufficiently in advance of the tax lien date to permit such taxpayers to take whatever steps may be necessary to secure the exemption; and that after once denying the exemption upon a specified ground, he, together with the taxing entities concerned, are thereafter powerless to urge that such denial may be sustained upon a different and alternative but equally conclusive ground. This proposition is base on the concept that the city and county are bound by an administrative interpretation of legislation, even though that interpretation is ultimately determined by the courts to have been in error and the law is in fact declared to be to the contrary. ■ Tax exemption is not a personal grant of the assessor but a legal right conferred by constitution and statute. ■ Erroneous allowance of tax exemption by taxing officials does not perpetuate a right of tax exemption or effectuate amendment of the Constitution or the taxing statutes. In this connection the court said, in *La Societe Francaise* v. *California Emp. Com.*, 56 Cal.App.2d 534, 553 [133 P.2d 47]: "It is the general rule that the government does not lose its revenue because of an erroneous ruling of an administrative official as to the meaning of a tax law. [Citations.] An administrative regulation which is in conflict with the statute is invalid and the government is not bound thereby. [Citations.] The duty of the tax officials is to collect taxes imposed by law. Accordingly, unless recovery is barred by the statute of limitations it is generally no defense that taxes were not paid when due in reliance on an official ruling of nonliability. The taxpayer is deemed to act with knowledge that administrative officials cannot bind the government by their erroneous interpretation of tax statutes." (See, also, *Stanford University Bookstore* v. *Helvering*, 83 F.2d 710, 712; *Outer Harbor D. & W. Co.* v. *City of Los Angeles*, 49 Cal.App. 120, 132 [193 P. 137]; 31 C.J.S., Estoppel, § 147, pp. 434-435.)

■ Estoppel may, of course, be invoked against a government entity in "exceptional cases" where "justice and right

require it.'' (*Farrell* v. *County of Placer*, 23 Cal.2d 624, 627-628 [145 P.2d 570, 153 A.L.R. 323].) But it may not be invoked where its application would tend to thwart public policy. (*County of San Diego* v. *California Water & Tel. Co.*, 30 Cal.2d 817, 826 [186 P.2d 124, 175 A.L.R. 747].) ▇ Here the Legislature has expressly required an irrevocable dedication of property to certain exempt purposes as a condition precedent to the grant of the welfare exemption. (Rev. & Tax. Code, § 214, subd. 6.) This requirement represents basic substantive policy enacted by the Legislature to insure compliance with the constitutional authorization for the exemption. (Cal. Const., art. XIII, § 1c.) To permit plaintiff to recover the taxes here in question on the theory of estoppel would be violative of this fundamental policy.

▇ Plaintiff's estoppel argument is lacking in equitable support. What plaintiff is urging is that although the assessor is now advised, in consequence of the Pasadena Hospital and Moody Institute decisions, that his action in previously allowing tax exemption to other substantial portions of its property was inadvertently contrary to law, and that the city and county were thus mistakenly deprived of revenue to which they would have been entitled, nevertheless the city and county are now precluded by the assessor's errors from retaining the taxes properly collected upon the properties here in issue, on which exemption was lawfully denied. ▇ This contention is contrary to the established principle that, since a suit for a refund of taxes is governed by equitable principles, a plaintiff who challenges the validity of a tax may recover only if it be shown that more has been exacted than in equity and good conscience should have been paid. (*Northrop Aircraft Inc.* v. *California Emp. Stab. Com.*, 32 Cal.2d 872, 879 [198 P.2d 898].) This principle was invoked and applied in *Simms* v. *County of Los Angeles*, 35 Cal.2d 303 [217 P.2d 936].) At page 316 the court observed that ''the rule operates to limit recovery to the difference between the tax actually paid and that which properly should have been exacted, and to prevent recovery if the taxpayer paid only his fair and just proportion of taxes.'' Since plaintiff's theory of estoppel is necessarily based on the assumption that the defense of lack of ''irrevocable dedication'' is well taken, it is clear that no part of the taxes which plaintiff seeks to recover was in excess of the amount which was fairly and justly payable upon the property with which we are here concerned.

██ Plaintiff's contention that defendants are precluded by laches from urging "irrevocable dedication" is without merit. Plaintiff emphasizes this issue was not raised until defendants filed their demurrer to its second amended complaint in February, 1952; that if this question had been brought up prior to plaintiff's filing its claim herein for exemption plaintiff could have amended its articles of incorporation to meet the requirement of the welfare exemption statute and that it is now too late. Plaintiff also points out that during this period the Pasadena Hospital and Moody Institute cases were in the courts and that defendants had raised the question of irrevocable dedication for exempt purposes in those cases. The answer to this is twofold: In the first place, the burden was on the plaintiff to establish its eligibility for the welfare exemption. The statute had not been judicially interpreted. Plaintiff had as much opportunity as defendants to forecast the outcome of those cases, and it was for plaintiff to decide how far it was willing to go in irrevocably dedicating its property to exempt purposes and what risk it was willing to take in relation thereto. Defendants were not under a duty to warn plaintiff that the outcome of these cases might be such that plaintiff's dedication of its property to exempt purposes would be insufficient to entitle it to the benefit of the welfare exemption. The second answer is that defendants raised this issue promptly after the decision in the Moody Institute case became final. There was no specific holding until then that property devoted to educational purposes, as in this case, was not entitled to the welfare exemption. Under these circumstances it cannot be said that defendants were guilty of laches.

Plaintiff's purported appeal from the order sustaining the demurrer without leave to amend is dismissed since such an appeal is unauthorized. (Code Civ. Proc., § 963.) The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied April 20, 1953, and appellant's petition for a hearing by the Supreme Court was denied May 21, 1953.