[Civ. No. 22085.    Second Dist., Div. Three.    June 6, 1957.]

HOUSE OF REST OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA (a Nonprofit Corporation), Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

524

Harold W. Kennedy, County Counsel, and Gordon Boller, Assistant County Counsel, for Appellants.

Hammack & Pugh, Dan S. Hammack, Jr., and Richard H. Vawter for Respondent.

VALLÉE, J.—Plaintiff brought this action against the County of Los Angeles and the city of Pasadena to recover taxes paid under protest, claiming its property was exempt from taxation under the welfare tax exemption law. (Cal. Const., art. XIII, § 1c; Rev. & Tax. Code, § 214.) Plaintiff filed its claims for the exemption with defendants, the claims were denied, and the taxes assessed for the tax year 1954-1955 paid under protest. Plaintiff had judgment. Defendants appeal.

Plaintiff was organized February 25, 1954. It is a nonprofit California corporation. It has no capital stock. It is organized to provide facilities for missionaries, clergymen, other religious workers and their families who work in establishing and furthering Christian purposes throughout the world and in the general diffusion of Christianity. Its specific and primary purpose is to provide a house of rest where missionaries and other Christian workers may stay in the United States. The members of the corporation are elected by the Board of Foreign Missions of the Presbyterian Church in the United States.

Plaintiff owns and operates the House of Rest in Pasadena for housing missionaries of the foreign and national boards of the Presbyterian Church in the United States and for workers of the Young Men's and Young Women's Christian Associations who are on furlough. The House of Rest is a two-story building with seven apartments completely furnished. Missionaries on furlough pay a token rent of $32 a month, which includes utilities and a cleaning charge. The amount received from rent is substantially less than the expense of operating and maintaining the House of Rest.

The difference is met by donations made to the Board of Foreign Missions of the Presbyterian Church in the United States, referred to as the Board of Foreign Missions, which allocates the funds to plaintiff for operating expenses.

Revenue and Taxation Code, section 214, as it read at the time in question, in relevant part provided:

"Property used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations or corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation if:

"(1) The owner is not organized or operated for profit; . . .

"(2) No part of the net earnings of the owner inures to the benefit of any private shareholder or individual;

"(3) The property is used for the actual operation of the exempt activity;

"(4) The property is not used or operated by the owner or by any other person so as to benefit any officer, trustee, director, shareholder, member, employee, contributor, or bondholder of the owner or operator, or any other person, through the distribution of profits, payment of excessive charges or compensations or the more advantageous pursuit of their business or profession;

"(5) The property is not used by the owner or members thereof for fraternal or lodge purposes, or for social club purposes except where such use is clearly incidental to a primary religious, hospital, scientific, or charitable purpose;

"(6) The property is irrevocably dedicated to religious, charitable, scientific, or hospital purposes and upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for religious, hospital, scientific, or charitable purposes. . . ." (Stats. 1953, ch. 730, p. 1994.)[1]  It appears to be conceded and the court found that plaintiff and the subject property met the requirements of subdivisions (1), (2), (4), and (5) of section 214 and that on liquidation, dissolution or abandonment of the owner the property will not inure to any prohibited private person. The dispute is as to whether plaintiff is a corporation organized for religious or charitable purposes; as to whether the property is irrevocably dedicated to either of such purposes; and as to whether the property is used exclusively for either of such purposes.

---

[1]Section 214 was amended in 1955.  (Stats. 1955, ch. 1067, p. 2034.)

■ Section 214 is to be given a strict but reasonable construction, and plaintiff has the burden of showing that it clearly comes within the terms of the exemption. (*Pasadena Hospital Assn.* v. *County of Los Angeles,* 35 Cal.2d 779, 785 [221 P.2d 62] ; *Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 Cal.2d 729, 734-735 [221 P.2d 31, 15 A.L.R.2d 1045].) Any doubt must be resolved against the right of exemption. (*Sutter Hospital* v. *City of Sacramento,* 39 Cal.2d 33, 39 [244 P.2d 390].)

Defendants assert plaintiff is not organized for religious or charitable purposes and that its property is not irrevocably dedicated to either of such purposes. ■ The purposes for which a corporation is organized; the extent of its powers; and whether its property is irrevocably dedicated to religious or charitable purposes are to be determined from its articles of incorporation. (*Pasadena Hospital Assn.* v. *County of Los Angeles,* 35 Cal.2d 779 [221 P.2d 62] ; *Pacific Home* v. *County of Los Angeles,* 41 Cal.2d 844, 849 [264 P.2d 539].)

According to its articles of incorporation plaintiff is organized for these purposes:

"*TWO*: The purposes of this corporation are as follows: To provide facilities for missionaries, clergymen, other religious workers and their families who work in establishing and furthering Christian purposes throughout the world and in the general diffusion of Christianity. The specific and primary purpose for which this corporation is formed is to provide a house of rest where missionaries and other Christian workers may stay in the United States. In connection with its purposes, this corporation may provide any and all kinds of facilities and services necessary or desirable to further the purposes of the corporation, and it may transact any and all business, engage in any and all activities and do any and all things which are lawful for a nonprofit corporation under the laws of the State of California.

"*THREE*: This corporation is organized pursuant to the General Nonprofit Corporation Law. . . ."

■ We are of the opinion it is manifest from plaintiff's articles that the purposes for which it is organized are to provide facilities for its missionaries and a house of rest in which they and other Christian workers may stay while they are in the United States. Its articles, taken as a whole, are not fairly or reasonably subject to the construction that it may engage in any other activity. Its purposes are exclusively religious and charitable.

■ The statement of the purposes in the articles results in defining the scope of authorized corporate activity and limits the powers of the corporate officers and agents and is controlling over the powers, both those stated in the articles and those given by statute.

■ The powers of a religious or charitable corporation are construed with reference to the purposes of its corporate existence. The statement in the articles of the objects, purposes, and powers of the corporation constitutes a limitation on the actual authority of the representatives of the corporation as between it and the state. (Corp. Code, § 803.)

■ Powers are to be deemed ancillary to the purposes and are limited thereby. (*General Conference of Free Baptists* v. *Berkey*, 156 Cal. 466, 469-470 [105 P. 411]; Ballentine, California Corporation Laws, 171, §§ 184, 187; 46 Harv.L. Rev. 1337.)

■ The enumerated powers in plaintiff's articles include only those activities which are incidental to and reasonably necessary to the accomplishment of the religious and charitable purposes for which it is organized and exists: "To provide facilities for missionaries, clergymen, other religious workers and their families who work in establishing and furthering Christian purposes throughout the world and in the general diffusion of Christianity," and specifically "to provide a house of rest where missionaries and other Christian workers may stay in the United States." Plaintiff is empowered "*in connection with its purposes*" to provide any and all kinds of facilities and services necessary or desirable "*to further the purposes of the corporation.*" (Emphasis supplied.) The power to "transact any and all business, engage in any and all activities and do any and all things which are lawful for a non-profit corporation under the laws of the State of California" is not a general grant of power. It is specifically restricted to furtherance of the purposes of the corporation.

All that plaintiff is empowered to do is to provide the facilities specified in its articles, and in so doing to exercise the powers given it by its articles and by statute, all of which are incidental to and are reasonably necessary to the accomplishment of those purposes.

Said the Supreme Court in *Pacific Home* v. *County of Los Angeles*, 41 Cal.2d 844 (p. 850 [264 P.2d 539]):

"The further enumerated powers of plaintiff to buy and

sell property, to make contracts, to receive devises and bequests, to borrow money, to contract debts and to do 'all other acts necessary or expedient for the administration of the affairs and attainment of the purposes of the corporation' are all powers which a nonprofit corporation has by statute (Corp. Code, § 9501), and which plaintiff would possess without their recital in its articles. (*Davis* v. *Pacific Studios Corp.*, 84 Cal.App. 611, 615 [258 P. 440].) The statement in the articles that the 'enumeration of specific powers shall not be held to limit or restrict in any manner the powers of this corporation' does not purport to be a general grant of power. Rather it appears to be a precautionary clause to signify that the incidental powers reasonably necessary to effectuate plaintiff's main purposes shall not be limited by their specific enumeration. (See 7 Fletcher Cyclopedia Corporations, Perm. ed., ch. 42, § 3648, p. 780.) It does not give plaintiff any powers except such as are specifically conferred by the articles and those given by statute. Such powers are not unlimited powers, but are subordinate to plaintiff's main objects and purposes, which are wholly charitable.''

█ Plaintiff's articles expressly provide, ''The property of this corporation is irrevocably dedicated to religious and charitable purposes.'' This provision is entirely consistent with its expressed purposes and powers. The requirement that property be irrevocably dedicated to religious or charitable purposes is concerned with purposes rather than uses. (*Pasadena Hospital Assn.* v. *County of Los Angeles*, 35 Cal. 2d 779, 785 [221 P.2d 62].) Plaintiff is not authorized to use any of its property for any purpose other than religious or charitable purposes. The fact that the deed of the property to plaintiff was a regular corporation grant deed without dedication or limitation as to the use of the property does not broaden the use which plaintiff may make of the property, as defendants appear to urge. Under its articles plaintiff may use the property for exempt purposes only. If plaintiff should devote its property to any nonexempt use the Attorney General could successfully seek to enjoin such use as *ultra vires* and as inconsistent with its purposes and powers. (*In re Los Angeles County Pioneer Society*, 40 Cal.2d 852, 861 [257 P.2d 1]; *Pacific Home* v. *County of Los Angeles*, 41 Cal.2d 844, 854 [264 P.2d 539].)

*Pasadena Hospital Assn.* v. *County of Los Angeles*, 35 Cal.2d 779 [221 P.2d 62], which held that certain property of the plaintiff had not been irrevocably dedicated to exempt

purposes, does not help defendants. In that case the plaintiff's articles empowered it "to permanently divert all of its property to *any* lawful nonprofit purpose . . . though the welfare exemption does not extend to *all* lawful nonprofit purposes and, in fact, expressly excludes certain ones such as fraternal, lodge, or social purposes unless 'clearly incidental' in nature (Rev. & Tax. Code, § 214, subd. (5)); its directors were empowered to convey all or part of its property in trust for *any* lawful purposes which they might deem advisable . . . ; in carrying out its broad purposes, plaintiff's powers were likened to those of corporations organized for *social* as well as other purposes . . . ; and finally, plaintiff was vested with authority 'to carry on any other lawful business, enterprise or activity whatsoever' which would 'enhance the value of its properties.' " No such powers are to be found in the articles of plaintiff in the present case. *Moody Institute of Science* v. *County of Los Angeles*, 105 Cal.App. 2d 107 [233 P.2d 51], is not apposite. In Moody the plaintiff's articles empowered it to receive and expend money and property "for other religious, scientific, and *educational* purposes." (Emphasis added.) Since the articles permitted the holding and use of property for educational purposes, on the authority of the Pasadena Hospital case it was held the plaintiff was not accorded an exemption under the statute.[2] *Goodwill Industries* v. *County of Los Angeles*, 117 Cal.App. 2d 19 [254 P.2d 877], is also not helpful. Among Goodwill's general and primary purposes as stated in its articles were educational and industrial nonexempt purposes. Distinguishing these cases in *Pacific Home* v. *County of Los Angeles*, 41 Cal.2d 844 [264 P.2d 539], the court stated (p. 853):

"The above-cited Pasadena Hospital, Moody Institute, and Goodwill Industries cases are clearly distinguishable. In each of those instances the recipient corporation was organized and operated for both exempt and nonexempt purposes, and the property in question was acquired without any dedication to any one of its several purposes, exempt or nonexempt. Consequently, though the property in fact may have been used for exempt purposes at the time that the welfare exemption was sought, it could not be said that it had been

[2] At that time property used for educational purposes was not exempt from taxation under the welfare tax exemption law. Section 214 was amended by the Legislature in 1951 to exempt property used by certain educational institutions. (Stat. 1951, ch. 242, p. 502.) By referendum the amendment became effective in 1952 when it was ratified by the people at the General Election, November 4, 1952.)

irrevocably dedicated to exempt purposes when the corporate powers and purposes of the claimant corporation permitted it to divert the property or its proceeds to nonexempt purposes. The various broadly stated purposes, exempt and nonexempt, of the respective recipient corporations at the time of acquisition of the property prevented the imposition of a trust on the property for hospital (Pasadena Hospital Assn.), religious (Moody Institute), or charitable (Goodwill Industries) purposes. But here when plaintiff acquired the properties in question, its purposes as declared in its articles of incorporation were limited solely to exempt charitable purposes.''

The stated powers of plaintiff in the case at hand are limited solely to the accomplishment of its exempt religious and charitable purposes. Plaintiff's powers are only exempt powers; it does not have any nonexempt power. Its activities within its corporate powers may be only exempt activities. It is organized solely for religious and charitable purposes and its property is irrevocably dedicated to such purposes.

The welfare tax exemption law provides that to be exempt from taxation, property shall be used exclusively for religious or charitable purposes. (Rev. & Tax. Code, § 214.) It is asserted plaintiff's property, the House of Rest, is not used exclusively for religious or charitable purposes.

The contention that the House of Rest is not used exclusively for religious or charitable purposes is predicated on the erroneous assumption that the furlough is a vacation, a residence away from the mission, a planned and rather extended absence from work—residence use, not mission or welfare use.

The Board of Foreign Missions of the Presbyterian Church in the United States, organized in 1837, is the agency of the Presbyterian Church which sends missionaries to foreign countries. Since World War II there have been between 1,000 and 1,250 missionaries continuously in the foreign field. For more than 100 years it has been the established policy of the Board of Foreign Missions to grant furloughs to all missionaries to return to the United States at regular intervals. On furloughs the missionaries and their families return to the United States. While in the United States, some of the missionaries and their families stay at the House of Rest.[3]

---

[3]The court found: ''The Board of Foreign Missions of the Presbyterian Church in the United States of America (herein called Board

The Manual of the Board of Foreign Missions states:

"PURPOSE OF FURLOUGHS

"Furloughs have become a part of the routine procedure of foreign missions service. The individual furlough is not a vacation but a change of activity. It enables the missionary (1) to obtain needed rest, medical care, mental and spiritual renewal; (2) to reestablish family and church relationships. From the standpoint of the service, it enables the missionary (3) to report to the home Church; (4) to share with the Board in creating greater missionary interest; (5) to prepare for better work upon returning to the field through advanced study and by observation of improved methods in institutions and churches."[4]

■ The test for determining whether the property is used exclusively for religious or charitable purposes is not whether such property is "essential, indispensable and neces-

---

of Foreign Missions), sends missionaries to various countries throughout the world to spread the word of Jesus Christ. It follows a fixed policy of granting furloughs to each missionary after a definite term of service in the field. When furloughed, the missionary and his family are returned to the United States. The length and number of furloughs granted a missionary will vary according to his missionary field and the period of each preceding term of service. Furloughs have for years been a part of the routine procedure of the Board of Foreign Missions service. The furlough is not a vacation but a change of activity. It enables the missionary to obtain needed rest, medical care, mental and spiritual renewal, to re-establish family and church relationships; to prepare for better work upon returning to the field through advanced study and by observation of improved methods in institutions and churches, and to again become familiar with the American way of life so it can be reinterpreted upon his return to the field."

[4]Other provisions of the Manual with respect to furloughs are:

"Study Furlough

"The furlough after the first term of service is regarded as a special opportunity for the missionary to complete his preparation for life service in the light of his field experience and of the field judgment as to the nature of his future work. For this reason, except in certain fields where special conditions have led to the fixing of a shorter period for the regular term, the term of service is shortened and a full year's study furlough is granted, the major part of which shall be devoted to advanced study as advised by the Mission or responsible field organizations, and under direction of the Board. The missionary shall plan to spend one full academic year in study at an approved institution of higher learning or comparable study under the direction of the Board."

"Pre-Furlough Information Regarding Housing Needs

"The missionary should write to the Board through the Foreign Secretary regarding housing during his furlough period. The Board maintains certain missionary apartments and has the responsibility for aiding in the placement of missionaries in other apartments and residences throughout the United States. Ordinarily the Board expects a missionary to reside in one of these apartments or homes if it is available. The study plans of the missionary often determine his place of residence and the Board gives special consideration to such cases.

sary'' for the accomplishment of such purposes, as argued by defendants, but whether the use is ''incidental to and reasonably necessary'' for the accomplishment of such purposes. ''To this point it would appear that the exemption of · property 'used exclusively for religious . . . or charitable purposes' should be held to include any property of the religious or charitable entity which is used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of religious or charitable purposes. The integrated activities as a whole must be examined in determining the tax status of property for the welfare exemption.'' (*Serra Retreat* v. *County of Los Angeles,* 35 Cal.2d 755, 758 [221 P.2d 59].)

In *Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 Cal.2d 729 [221 P.2d 31, 15 A.L.R.2d 1045], the major part of the property claimed to be exempt under the welfare tax exemption law was devoted to the housing of essential hospital personnel—residence use—and to the conduct of a

---

In any event, the Board should know through correspondence in advance what the individual and family needs are in regard to housing.''

''Country of Furlough Residence

''(1) It is considered desirable that furloughs be spent in the United States for the sake of the missionary's influence in the home Church. . . .''

''Rest and Recuperation

''Based on the medical examination and with the advice of the Medical Department, the missionary shall plan to spend a sufficient portion of his furlough in rest and recuperation to make certain of his return to the field in the best physical condition.''

''Continued Preparation for Service

''(1) *First Term Missionary.* Under the immediate supervision of his Foreign Secretary, the first term missionary shall devote the major portion of his first furlough to advanced study, ordinarily in an institution of higher learning. The place of study shall be determined by the missionary and Foreign Secretary in consultation with the Secretary for Student Work. For economy in travel, the institution should preferably be near the missionary's home, yet highest efficiency is not to be unduly sacrifi[c]ed for such saving.''

''General Promotional Work

''All missionaries on furlough should place themselves at the disposal of the Home Base Department for longer or shorter periods of promotional work. After plans for rest and medical care have been made in consultation with the Medical Department, and plans for study have been arranged, the missionary should inform the Home Base Department as to the periods of time he will be free for such promotional work.''

''Visit to Supporters

''Those missionaries supported by individual churches or church groups should arrange, after consultation with the Home Base Department, to visit these supporting groups during furlough, remaining in each community long enough to become acquainted with the membership.''

nurses' training school operated in connection with the hospital. Holding that the use of property by the plaintiff hospital for a nurses' training school and to provide housing for hospital interns, resident doctors, student nurses, and other essential employees required to be readily available in its effective operation, and maintaining a tennis court as a limited recreation for the hospital personnel, constituted uses exclusively for hospital purposes, and that the property was within the scope of the welfare tax exemption law, the court declared (p. 736):

"It thus appears that under the rule of strict but reasonable construction, the phrase 'property used exclusively for . . . hospital . . . purposes' should be held to include any property which is used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of hospital purposes; or, in other words, for any facility which is reasonably necessary for the fulfillment of a generally recognized function of a complete modern hospital. . . .

"[P. 738.] Maintained as an integral part of the hospital operations, a nurses' training school has generally been regarded as a facility which is incidental to and reasonably necessary for the accomplishment of hospital purposes, and therefore entitled to exemption. [Citations.] Though necessarily serving the private educational interest of the student nurses in attendance, property so used for a nurses' training school does not thereby lose its character as property 'used exclusively for . . . hospital . . . purposes' within the scope of the welfare exemption law. [Citations.] Rather, it is to be regarded simply as 'an educational feature' of the hospital—'an incident to [the latter's] main purpose and usefulness.' . . .

"[P. 739.] Typical of such living quarters were those furnished ·by plaintiff Cedars of Lebanon Hospital in 'a building known as Lebanon Hall . . . attached to the main building of the hospital' and for which 'each of the nurses' so accommodated 'makes a payment of $10.00 per month' to the hospital. . . .

"[P. 744.] The tennis court is located on the hospital grounds and is used as an outdoor recreational facility for the hospital personnel as above mentioned. . . .

"[P. 745.] In other words, the tennis court was reasonably necessary for the fulfillment of a generally recognized function of a complete, modern hospital. Perhaps it may not be said that such recreational facility, in its use by either

patients or essential personnel, is indispensable to the accomplishment of hospital purposes; but absolute indispensability does not commend itself as an appropriate test, and it finds no support in the authorities.''

*Y.M.C.A.* v. *County of Los Angeles,* 35 Cal.2d 760 [221 P.2d 47], held that dormitory rooms in the plaintiff's buildings which were rented and returned income—residence use— were used exclusively for charitable purposes. The court stated (p. 767):

''Rather the construction of the law, though strict, must also be reasonable. To this end it would appear that the exemption of property 'used exclusively for . . . charitable purposes,' like the exemption of property 'used exclusively for . . . religious [or] hospital purposes,' should be held to include property used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of such purposes.

. . . . . . . . . . . . . .

''The dormitory accommodations furnished at plaintiff's respective branches appear to be a reasonably necessary facility in carrying out plaintiff's general program and to constitute a base of operations from which radiate its commonly recognized influences and teachings directed to the elevation and betterment of young men and boys. . . .

'' [P. 769.] It is manifest from the record here that plaintiff's conduct of dormitory facilities at its respective branches correlates wholly with its purpose of providing for the welfare of young men and boys of moderate earning capacity and income, through the maintenance of lodging quarters at a minimum cost so that they may have a place of study, recreation and abode, under wholesome and decent influences and with proper protection and guidance designed to foster good citizenship and inculcate Christian ideals and character. . . . As so analyzed, the fact that plaintiff's dormitories, as a secondary consideration also serve the residential purposes of the occupants does not destroy the effect of their dominant purpose as property 'used exclusively for religious . . . or charitable purposes' within the contemplation of the welfare tax exemption law.

''Similar considerations prevailed in opinions this day filed with regard to the tax exempt status of a nurses' home operated as a necessary adjunct of a hospital (*Cedars of Lebanon Hospital* v. *County of Los Angeles,* L. A. No. 20610, *ante,* [35 Cal.2d] p. 729 [221 P.2d 31]) and the lodgings of

priests in effectuating the operation of a religious retreat house (*Serra Retreat* v. *County of Los Angeles*, L.A. No. 20612, *ante*, [35 Cal.2d] p. 755 [221 P.2d 59]).'' (Also see *Fredericka Home for the Aged* v. *County of San Diego*, 35 Cal.2d 789, 792 [221 P.2d 68]; *Pacific Home* v. *County of Los Angeles*, 41 Cal.2d 844 [264 P.2d 539].)

The Board of Foreign Missions of the Presbyterian Church has found that missionaries, because of their isolation in foreign countries, lose touch with what has happened in the church and in the United States. Because of that fact and because world-wide views are changing so rapidly, the Board feels it is essential that missionaries come home from time to time on furlough to obtain needed rest, medical care and recuperation, mental and spiritual renewal; to reestablish family and church relationships; to report to the home church; to study; to exert influence in the home church; to re-orientate themselves with what is happening in the church at home and throughout the world; to engage in promotional work; to create greater missionary interest; to prepare for better work on returning to the field. Certain missionaries are called home specifically to attend conferences on the Christian approach to communism. Furloughs are not vacations. Vacations are granted missionaries at regular intervals while they are in the field.

The only use made of plaintiff's property is providing temporary low cost housing facilities in the House of Rest for such missionaries and their families while the missionaries are on furlough, and for other religious workers and their families who work in establishing Christian purposes throughout the world. The only permanent resident of the House of Rest is a hostess who is available to the missionaries at all hours. The House of Rest is maintained as an integral part of the religious and charitable operations of the Presbyterian Church. It aids and augments the Board of Foreign Missions' program of spreading Christianity throughout the world. It is used solely in carrying out that program. (*Y.M.C.A.* v. *County of Los Angeles*, 35 Cal.2d 760, 767 [221 P.2d 47].) It seems evident that plaintiff's property is a facility which is incidental to and reasonably necessary for the accomplishment of plaintiff's religious and charitable purposes and that it is used exclusively for those purposes. (*Cedars of Lebanon Hospital* v. *County of Los Angeles*, 35 Cal.2d 729, 736 [221 P.2d 31, 15 A.L.R.2d 1045].)

The trial court properly concluded and adjudged that plaintiff's property was exempt from taxation for the tax year in question.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.