[Civ. No. 14088. Second Dist., Div. Three. July 30, 1943.]

CITY OF OJAI, Petitioner, v. J. H. CHAFFEE, as County
Auditor, etc., Respondent.

Stacy C. Bates for Petitioner.

M. Arthur Waite, District Attorney (Ventura), and Julien G. Hathaway, Deputy District Attorney, for Respondent.

J. H. O'Connor, County Counsel (Los Angeles), and A. Curtis Smith, Deputy County Counsel, as Amici Curiae on behalf of Respondent.

SHAW, J. pro tem.—This is an original proceeding for a writ of mandate, the object of which is to test the validity of section 4986.3 of the Revenue and Taxation Code. That section, while not a part of the original code as enacted in 1939, was added to the code by chapter 530 of the statutes of 1939. It appears in the division of the code relating to general property taxation for state and county purposes and is a part of a chapter dealing with the cancellation of assessments and taxes. It reads as follows: "All or any portion of any uncollected tax, penalty, or costs, heretofore or hereafter levied, and not heretofore validly canceled, may, on satisfactory proof, be canceled by the auditor on order of the board of supervisors with the written consent of the district attorney if it was levied or charged on property subject to assessment for the payment of bonds issued under the Improvement Bond Act of 1915 where such property was acquired after the lien date by a city on foreclosure proceed-

ings under the Improvement Bond Act of 1915. If a city is entitled to bring foreclosure proceedings under the Improvement Bond Act of 1915 against any property and the city acquires the property in any other manner than by foreclosure and the governing body of the city by resolution, covering any number of parcels acquired, declares that such acquisition was in lieu of acquisition under foreclosure proceedings, such acquisition is, for the purposes of this section, an acquisition by foreclosure proceedings under the Improvement Bond Act of 1915. This section applies regardless of whether the property acquired by the city is impressed with a public trust or is acquired for the purpose of resale.''

The Improvement Bond Act of 1915 referred to by this section is a statute (now included in the Streets and Highways Code, as division 10, by amendment in 1941) authorizing the issuance of bonds to represent and be secured by assessments levied in municipalities for the cost of improvements made under any statute,—of which there are several—which authorizes the making of improvements and the assessing of the cost thereof against real property. No bond issued under this act is a charge against any particular parcel of real property, but all the bonds issued for any improvement are secured generally by all the unpaid assessments levied therefor. If, after bonds are issued, an assessment becomes delinquent, it may be foreclosed, either by proceedings taken out of court by the municipal tax collector, or by an action to foreclose brought by the city. In either case the city may buy the property at foreclosure sale and in certain cases must do so when there is no other purchaser; and when it becomes the purchaser it must pay into the proper fund the amount of the delinquent assessment, and also of all installments which thereafter become delinquent. The lien of assessments under this act is subject to that of state, county, and municipal taxes, as well as that of other special assessments having priority.

The petition herein alleges that there are a large number of properties in the county of Ventura, both within and without the city of Ojai, which are subject to delinquent assessments under the Improvement Bond Act of 1915, and that in a large number of instances the market value of these properties is substantially less than the aggregate of taxes, assessments, penalties and costs which are a lien upon them; and that the problem here presented is not limited to the county

of Ventura but is common to many municipalities in the state. Respondent has filed an answer attempting to deny these allegations, but it is not effective for that purpose, by reason of its failure to comply with the form of denial permitted by law (Code Civ. Proc., sec. 437). We therefore take these allegations as true.

Proceeding under section 4986.3 of the Revenue and Taxation Code, above quoted, the City Council of the City of Ojai passed a resolution declaring that said city was entitled to bring foreclosure proceedings under the Improvement Bond Act of 1915 against the real property involved in this proceeding, that in lieu of such foreclosure it had acquired said property in a manner other than by foreclosure; that this was done "in conformity with a general plan adopted to acquire and to return to private ownership the properties in said City subject to delinquent assessments levied under the provisions of said Act, and/or to delinquent City and/or County taxes, and that the property above described has therefore been acquired and is therefore held for the purpose of resale to accomplish such object," and that "the public interest and necessity require, and the general interest of the City of Ojai and of the County of Ventura will be served and promoted" by the cancellation of any uncollected taxes levied upon the property, and requesting the cancellation of such taxes under section 4986.3. The Board of Supervisors of the County of Ventura passed a resolution reciting the same facts as to the mode of acquisition of the property by the city, finding that the public interest and necessity and the general interest of the city and county will be served by granting the city's request, and directing the respondent, as Auditor of the County of Ventura "to cancel any uncollected tax, penalty or costs heretofore levied, and not heretofore validly canceled" upon the property in question. The district attorney of the county endorsed his written consent to the cancellation upon this resolution, but when it was presented to respondent he refused to make the cancellation and the writ is sought to compel him to do so.

Respondent's only contention in support of his refusal is that section 4986.3 of the Revenue and Taxation Code is unconstitutional. His first and principal point is that it, in effect, authorizes a gift of public property of the county, that is, the unpaid taxes which are to be canceled, to the city, contrary to section 31 of article IV of the California Constitution. That section reads, in material part, as fol-

lows: "The legislature shall have no power to . . . ; nor shall it have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever. . . ." We see no reason to doubt that the county taxes to be canceled under the code provision in question constitute a "thing of value" and so come within the purview of this constitutional prohibition. Nor do we doubt that, as far as mere mode of procedure is concerned, the act of cancellation would be the making of a gift. While nothing would be literally handed over by the county to the city, the latter would receive the same benefit as if the county had delivered so much money to it and the city had then used the money to pay the taxes. (*County of San Bernardino* v. *Way*, (1941) 18 Cal.2d 647, 654 [117 P.2d 354].) ■ So, too, the fact that both the county and the city are arms of the state would not necessarily prevent a transfer from one to the other from being a gift. ■ As the Supreme Court said, in *City of Oakland v. Garrison*, (1924) 194 Cal. 298, 303 [228 P. 433], this constitutional provision "would prevent the appropriation of county funds to a municipal corporation even for a public purpose, if that purpose were purely municipal and of no interest or benefit to the county as a political subdivision."

We are thus brought to a consideration of the nature and purpose of the transaction authorized by the statute, in order to determine whether it constitutes a gift. In *County of San Diego* v. *Hammond*, (1936) 6 Cal.2d 709, 721 [59 P.2d 478, 105 A.L.R. 1155], the Supreme Court said: "It is well settled that in determining whether any appropriation of public funds is to be deemed a gift 'the primary and fundamental subject of inquiry is as to whether the money is to be used for a public or private purpose. If it is for a public purpose . . . it is not, generally speaking to be regarded as a gift.' (*City of Oakland* v. *Garrison*, 194 Cal. 298, 302 [228 P. 433].)" This declaration of principle was approved and followed in *County of Los Angeles* v. *Jones*, (1936) 6 Cal.2d 695, 705 [59 P.2d 489] and *County of Alameda v. Janssen*, (1940) 16 Cal.2d 276, 281 [106 P.2d 11, 130 A.L.R. 1141], and it was quoted with approval and followed in *County of San Bernardino* v. *Way, supra*, (1941) 18 Cal.2d 647, 653.

In all of these cases except the Janssen case the court had under consideration one or another of a series of statutes passed in the last few years in an attempt to remedy the situation arising

out of the recent depression and so well known that the court took notice of its general outlines (*County of San Bernardino* v. *Way, supra,* at p. 660), in which large amounts of property, especially that lying in special assessment districts, many of which overlapped, had become overburdened with taxes and assessments, and delinquent in the payment thereof, had been sold to state or city for non-payment of such taxes and assessments and had thereby been exempted from taxation and removed from the tax rolls, so that such property no longer produced any revenue for public purposes. For further descriptions of this situation see the opinions in *County of San Diego* v. *Childs,* (1932) 217 Cal. 109, 113-114 [17 P.2d 734]; *County of Los Angeles* v. *Rockhold,* (1935) 3 Cal.2d 192, 195-196 [44 P.2d 340, 100 A.L.R. 149]; *County of San Diego* v. *Hammond, supra,* 6 Cal.2d 725-726; *County of Los Angeles* v. *Jones, supra,* 6 Cal.2d 706. The statutes involved in *County of San Diego* v. *Hammond, supra,* and *County of Los Angeles* v. *Jones, supra,* were in the nature of refunding statutes, operating to reduce in amount and refund bonds which had previously been issued for special or local improvements, in the doing of which the county was to aid by a contribution of money from its funds. In *County of San Bernardino* v. *Way, supra,* the county's contribution to the refunding plan was to be by way of cancelling delinquent general taxes upon the land subject to the assessments which were refunded. The purpose, or at least one of the purposes, in each of the three cases last cited was to restore the property in question to the tax rolls and make it once more a source of public revenue and it was held in each case that this was a public purpose in which the county was interested (see *Anglo California National Bank* v. *Leland,* (1937) 9 Cal.2d 347, 352 [70 P.2d 937], to the same effect) and that a contribution by it to bring about that purpose was not a gift, although private persons might incidentally benefit from it by a reduction in the total amount of taxes and assessments standing against their land. The court in *County of San Diego* v. *Hammond, supra,* at 6 Cal.2d 727, stated its conclusion thus: "Our conclusion upon the question under discussion is that the Act of 1935 (Stats. of 1935, chap. 10, p. 63) is not subject to the constitutional objection that it authorizes the gift of public money to an individual or to any private purpose. The express purpose of the act is to restore to the tax rolls of the county the large

amount of property within said delinquent assessment districts, which now, due to said excessive assessments, have been sold to the state and are contributing absolutely nothing to the support of the county government. This purpose is one within the constitutional powers of the legislature to accomplish, and it is not rendered futile by the fact that in carrying it out certain individuals incidentally are benefited thereby.''

Section 4986.3 of the Revenue and Taxation Code appears to be another statute passed for the same general purpose as were those considered in the cases above cited and the same rules should be applied to it. It is true it contains no express statement of its purpose and no recital of the facts moving the Legislature to adopt it. The admitted allegations of the petition herein show the existence of a similar state of facts. The resolution of the City Council of the City of Ojai shows that the cancellation here will be in furtherance of a plan to restore delinquent properties to private ownership, and both that resolution and the resolution of the county board of supervisors state that the cancellation here will be in the public interest. Such declarations are given considerable weight. (*County of San Diego* v. *Hammond, supra,* 6 Cal.2d 726; *County of Los Angeles* v. *Jones, supra,* 6 Cal.2d 705; *County of San Bernardino* v. *Way, supra,* 18 Cal.2d 654.)

But it is not necessary that facts showing the validity of a statute be affirmatively shown in order to require a court to uphold it. The statute comes before the court with a strong presumption in favor of its constitutionality (*Jersey Maid etc. Co.* v. *Brock,* (1939) 13 Cal.2d 620, 636 [91 P.2d 577]; *Hart* v. *City of Beverly Hills,* (1938) 11 Cal.2d 343, 348 [79 P.2d 1080]) and before it can be held invalid that presumption must be overcome, either by facts appearing upon the face of the statute or by such others as are matters of judicial notice. (5 Cal.Jur. 631; *Los Angeles County F. C. Dist.* v. *Hamilton,* (1917) 177 Cal. 119, 125 [169 P. 1028], and cases cited; *Frohliger* v. *Richardson,* (1923) 63 Cal.App. 209, 214 [218 P. 497].) If the validity of a statute depends on the existence of a certain state of facts, it will be presumed that the Legislature has investigated and ascertained the existence of that state of facts before passing the law. (5 Cal.Jur. 632; *Galeener* v. *Honeycutt,* (1916) 173 Cal. 100, 104 [159 P. 595].) This is true even though the statute contains no express finding of such facts. (*Galeener* v. *Honeycutt, supra.*) Here we

find nothing in the statute itself on which to base a conclusion of unconstitutionality, for its very terms suggest, even if they do not state, the existence of such a condition as was held to justify similar statutes in the cases above cited. Nor does our judicial notice produce anything to the disadvantage of the statute, for while we may, perhaps, not take judicial notice of the condition existing in any particular assessment district, we do know judicially that a condition of overlapping assessments and unduly burdensome taxes and assessments, with resultant abandonment of property to sales for taxes and assessments, has prevailed quite widely over the state. As far as appears, an ample factual background may exist for the statute, under the rules established by the cases. We must, therefore, uphold it under those rules.

Respondent also contends that section 4986.3 provides for a remission of taxes and is therefore in violation of section 1 of article XIII of our Constitution, which provides that all property in the state, with some exceptions, shall be taxed in proportion to its value. We find no substantial difference between this point and that relating to a gift, for a remission of taxes, which implies that there is no consideration for the act constituting the remission, would at the same time be a gift of the amount thereof, as we have already held in discussing a cancellation of taxes. The same argument was presented to the Supreme Court in *County of San Bernardino* v. *Way, supra,* 18 Cal.2d 647, discussed at some length and rejected (see p. 657), the court deeming the statutory purpose of restoring property to the tax rolls sufficient to prevent the proceeding from constituting a "remission" of taxes. That decision is determinative of the same point here.

There is also a suggestion in respondent's brief that the statute here makes an improper and discriminatory classification because it is limited to property subject to bonds issued under the Improvement Bond Act of 1915, although there are other acts by which improvement bonds may be charged against real property. A similar objection was made to the statute involved in *County of San Bernardino* v. *Way, supra,* (p. 660) and was there held insufficient, the court saying: "This criticism goes only to the policy of the legislation in question and the wisdom of the legislature in determining to exclude the aforementioned districts from the benefits of the tax cancellation provision, which considerations are not the concern of the courts. . . . 'If good ground for the classifica-

tion exists, such classification is not void because it does not embrace within it every other class which might be included.' '' The statute here cannot be invalidated on the ground suggested. (See, also, *South San Joaquin Irr. Dist.* v. *Neumiller*, (1935) 2 Cal.2d 485, 490 [42 P.2d 64].)

 The amicus curiae, appearing in behalf of the respondent, argues that section 4986.3 is not mandatory and hence no enforceable duty rests on respondent, basing this contention on the use of the word ''may'' in the section and the definition of this word elsewhere in the Revenue and Taxation Code as being permissive. But, accepting and applying this definition, we think the discretion given thereby is vested solely in the board of supervisors, who may order the cancellation, and in the district attorney, whose consent thereto is necessary. The auditor is a mere ministerial officer, in this matter, and was doubtless specified as the officer to make the cancellation because the assessment roll is in his possession after taxes have become delinquent. (Rev. & Tax. Code, secs. 2622, 2623, 2625-2627.) When such cancellation has been properly ordered and consented to, the duty to make it rests on the auditor.

It is ordered that a peremptory writ of mandate issue directing the respondent to make the cancellations prayed for in the petition here.

Shinn, Acting P. J., and Wood (Parker), J., concurred.