[Civ. No. 17174.    First Dist., Div. Two.    Apr. 10, 1957.]

DOCTORS GENERAL HOSPITAL OF SAN JOSE, Appellant, v. THE COUNTY OF SANTA CLARA et al., Respondents.

Paul I. Myers, Jr., for Appellant.

Spencer M. Williams, County Counsel, Rodney R. Atchison and Robert McNamee, Deputy County Counsel, Ferdinand P. Palla, City Attorney (San Jose), and Harry Kevorkian, Assistant City Attorney, for Respondents.

Harold W. Kennedy, County Counsel (Los Angeles), and Alfred Charles De Flon, Deputy County Counsel, as Amici Curiae on behalf of Respondents.

KAUFMAN, P. J.—This is an action brought by appellant Doctors General Hospital of San Jose, a California nonprofit corporation, to recover property taxes for the year 1953-1954, which had been levied by the respondents, county of Santa Clara and city of San Jose, and paid under protest by the appellant. The trial court found that the appellant did not meet the requirements prescribed by the 1953 amendment to section 214, subdivision (3), of the Revenue and Taxation Code for the "welfare exemption" which section 1c of article XIII of the state Constitution authorized the Legislature to grant. The issue here presented is the constitutionality of the retroactive application of the 1953 amendment to section 214, subdivision (3), Revenue and Taxation Code.

It is conceded that appellant after the effective date of the amendment has been qualified for the exemption. Prior to the 1953 amendment, appellant's hospital could not qualify under section 214, subdivision (3), of the Revenue and Taxation Code, because its operation produced an excess of income over expenses. *Sutter Hospital* v. *City of Sacramento,* 39 Cal.2d 33 [244 P.2d 390], held that under a strict but reasonable construction of section 214, subdivision (3), a hospital could not qualify for the property tax exemption if it made any profit, as the statute prohibited any excess of income over revenue, regardless of the purpose for which the profit is used.

The 1953 Amendment (Stats. 1953, ch. 730) is as follows: "provided, that in the case of hospitals, such organization shall not be deemed to be organized or operated for profit, if during the immediate preceding fiscal year the excess of

operating revenues, exclusive of gifts, endowments and grants in aid, over operating expenses shall not have exceeded a sum equivalent to 10% of such operating expenses.'' As this enactment occurred on May 18, 1953, a date prior to the time that taxes were due and payable, November 1, 1953, (Rev. & Tax. Code, § 2605), but after the lien date, the 1st Monday in March, 1953, (Rev. & Tax. Code, § 2192), the amendment was expressly made retroactive as to all taxes levied on or after January 1, 1953. The amendment also contained an urgency clause (Stats. 1953, Ch. 730, § 2) making it effective immediately because of the effect of the Sutter case.

The question then is whether the 1953 Amendment contravenes the prohibition against gifts of public money of section 31 of article IV of the state Constitution. The appellant's first contention that the Constitution of the State of California does not prohibit retrospective legislation *per se,* need not be discussed.

The appellant's second contention is that there was no gift in the case at bar, as the right to the tax moneys did not vest in the state until the date that the taxes were due and payable, November 1. There is no merit in this contention, in a case such as this one where the statute specifically prescribes a lien date prior to the due date. The statute clearly states that city and county ad valorem property taxes constitute a lien on the property (Rev. & Tax. Code, §§ 2187, 2188, 2189) and that this lien attaches as of the first Monday in March. (Rev. & Tax. Code, § 2192.)

In all of the cases relied on by the appellant to support its contention, there was no statutory lien date prior to the due date. In *Allen* v. *Franchise Tax Board,* 39 Cal.2d 109 [245 P.2d 297], an amendment to State Income Tax law retroactively changing the tax base after the accrual of tax liability but before the date when taxes became due and payable was upheld by the court. This case dealt only with the specific income tax situation in issue. There was no statutory lien date. In *Estate of Stanford,* 126 Cal. 112 [54 P. 259, 58 P. 462, 45 L.R.A. 788], it was held that a retroactive release by the Legislature of the collateral inheritance tax was a void gift of public funds within the meaning of article IV, section 31, as the tax was due and payable at the death of the decedent which occurred prior to the legislative enactment. The case does not, as appellant maintains, stand for the proposition that vesting does not occur until the tax becomes due and

payable. In dealing with a retroactive amendment in legislation concerned with other types of taxes, the reasoning of the Stanford case has been followed by the courts. In *People* v. *Schmidt*, 48 Cal.App.2d 255 [119 P.2d 766], it was held that the repeal of a provision of the Alcoholic Beverage Control Act could not affect the right of the people to collect the fee, as the right to collect had vested under the act before the repeal.

*Estate of Potter*, 188 Cal. 55 [204 P. 826], held that the right to the inheritance tax vested in the state at the date of the taxable transfer even though it was not due and payable until the death of the decedent. As stated by the court in *Trippet* v. *State*, 149 Cal. 521 at page 529 [86 P. 1084, 8 L.R.A.N.S. 1210], "There is no legal inconsistency in the idea of a right being vested, although the possession may be postponed or contingent upon the performance of certain acts."

In *City of Santa Monica* v. *Los Angeles County*, 15 Cal. App. 710 [115 P. 945], the court held that property acquired by the city after the lien date but prior to the levy and assessment was not exempt from taxation as the lien attached on the first Monday in March. The court stated at page 712 that "a lien declared by positive statute is not dependent for its existence upon subsequent acts requisite to its enforcement."

In *San Diego County* v. *Riverside County*, 125 Cal. 495 [58 P. 81], the court held that although the right of San Diego to the payment of certain taxes assessed on railroad tracks did not accrue until a valid assessment had been made, the right to taxes arose on the lien date, and was one of the assets of San Diego County to be prorated between San Diego County and the newly created County of Riverside. The court said at page 500: "The lien for the taxes justly leviable upon the property of a railroad company attaches on the first Monday of March in each year, and the obligation to pay necessarily accrues at the same time, if not earlier. Payment is not due, of course, until the assessment has been made; but when that has been done and the amount of taxes ascertained, it is payable to the county in which the roadbed was included at the time when the lien attached." Furthermore the legislative history of the 1953 statute reveals that the section providing for retroactive application was added by amendment (1953 Assembly Journal p. 1932). The assumption of the Legislature appears to have been that the property tax vests as of the March 1 lien date.

It should be noted that the 1954 amendment to article XIII, section 1c of the state Constitution, which was designed to liberalize the welfare exemption, is made applicable to buildings and equipment in the course of construction on or after March 1, 1954.

The appellant further contends that even if the right to tax moneys vested on March 1 and constituted a thing of value within the purview of section 31 of article IV of the state Constitution, the Legislature could make a valid gift thereof under the public doctrine of section 1c, article XIII of the state Constitution. It is a well recognized rule that the courts will not disturb a legislative determination of what constitutes a public purpose, as long as it has reasonable basis. (*Alameda County* v. *Janssen*, 16 Cal.2d 276 [106 P.2d 11, 130 A.L.R. 1141] ; *Shean* v. *Edmonds*, 89 Cal.App.2d 315 [200 P.2d 879] ; *County of Los Angeles* v. *Jessup*, 11 Cal.2d 273 [78 P.2d 1131].) However, in the 1953 amendment there is no statement indicative of purpose, unless the urgency clause is so construed. There is no doubt that the provision for hospitals is a well recognized public purpose. However, it has been held that a county cannot provide medical treatment and care to those who can obtain and pay for such services at private hospital institutions. (*Goodall* v. *Brite*, 11 Cal.App.2d 540 [54 P.2d 510].) Under the 1953 amendment the 10 per cent excess of profits over operating costs can be spent for any hospital purpose. The money could be used to provide more luxurious care in the existing facilities. Under the appellant's argument any hospital purpose is a sufficient public purpose for an appropriation of public funds. It is our view that private hospitals are exempt from taxation not because there is a public purpose within the meaning of article IV, section 31, but rather because the Legislature's power to exempt is limited to specific instances.

In *City of Ojai* v. *Chaffee*, 60 Cal.App.2d 54 [140 P.2d 116], the court held that a statute providing for the cancellation of uncollected taxes was not in contravention of article IV, section 31 of the Constitution, because the specific public purpose was to restore the property in question to the tax rolls and make it once more a source of public revenue. In *Simpson* v. *City of Los Angeles*, 40 Cal.2d 271 [253 P.2d 464], the court upheld the surrender of unclaimed animals in the pound to private research laboratories for the specific public purpose of "increasing knowledge relating to the cure of disease." In *City of Oakland* v. *Garrison* (1924), 194 Cal.

298 [228 P. 433] the funds were required to be used for the paving of a certain road in the city of Oakland. Under the 1953 amendment there is no legally enforceable duty to use the 10 per cent excess profits for any specific hospital purpose. It is not enough that appellant intends to use the profits for a hospital purpose. *Cedars of Lebanon Hospital* v. *County of Los Angeles*, 35 Cal.2d 729 [221 P.2d 31, 15 A.L.R. 2d 1045], involved the application of the welfare exemption to various items of hospital property. In holding that the buildings under construction on tax date intended for use in housing of student nurses were not within the welfare exemption, the court said at p. 742, "as above quoted, the pertinent constitutioanl provision (art. XIII, § 1c) and the implementing statute (Rev. & Tax. Code, § 214) unequivocally require that the property be used "for the enumerated purposes. Such express limitation making *use* the focal point of consideration contemplates actual use as differentiated from an *intention* to use the property in a designated manner."

We can find nothing in the 1953 amendment which would compel the appellant to use the 10 per cent profit exclusively for such hospital purposes as would also be proper public purposes.

In view of the foregoing the judgment of the trial court finds support in the law and must be affirmed.

Judgment affirmed.

STONE, J. pro tem.*—I concur on the ground the tax involved in this case became a lien on the first Monday in March 1953, and the tax exemption statute was not enacted until May 18, 1953. The laudatory purpose of the exemption statute as expressed in the dissenting opinion cannot be refuted. Yet, in my opinion the worthy purpose does not justify the abrogation of a vested property right. There appears to be no authority holding that a tax lien is inferior to any other type of lien. In fact, a tax lien takes precedence over earlier liens and is superior and hostile to any prior mortgage or deed of trust. (24 Cal.Jur. 221.)

Admittedly, the amount of the tax was not determined until after the beginning of the fiscal year commencing July 1, 1953, but the lien to secure payment of that tax attached the first Monday of the preceding March.

The retroactive aspect of the statute insofar as it purports to nullify a vested tax lien is unconstitutional. I concur.

*Assigned by Chairman of Judicial Council.

DOOLING, J.—I dissent: My associates in this case take
too narrow a view of the power of the Legislature to promote
a public purpose. The purpose of the Legislature in adopting
the 1953 amendment to section 214 Revenue and Taxation
Code is set forth in section 4 of the enactment. (Stats. 1953,
pp. 1995-1996.) After reciting the general understanding
that "it was the purpose and the intent of the Legislature
that under section 214 Rev. & Tax. Code such organization
could rightfully use the income from the property devoted to
the exempt activity for the purposes of debt retirement, ex-
pansion of plant and facilities or reserve for operating con-
tingencies without losing the tax exempt status of its prop-
erty," the Legislature referred to the then recent decision
of *Sutter Hospital* v. *City of Sacramento*, 39 Cal.2d 33 [244
P.2d 390] and added: "this decision was broad in its appli-
cation and has caused the postponement or actual abandon-
ment of plans for urgently needed hospital construction and
expansion at a time when there are insufficient hospital facili-
ties in this state to properly care for the health needs of its
citizens, and virtually no surplus facilities for use in case
of serious epidemic or disaster. This Legislature has recognized
that in addition to gifts and bequests, the traditional method
for the financing of the expansion and construction of volun-
tary religious and community nonprofit hospital facilities is
through the use of receipts from the actual operating fa-
cilities . . .

"It has never been the intention of the Legislature that
the property of . . . organizations otherwise qualifying for
the welfare exemption should be denied exemption if the
income from the actual operation of the property . . . be
devoted to . . . debt retirement, expansion of plant and
facilities or reserve for operating contingencies . . ."

This legislative finding is ignored by the majority opinion,
the whole expressed legislative purpose to foster hospital fa-
cilities which the Legislature has found to be urgently needed
being brushed off with the statement: "We can find nothing
in the 1953 amendment which would compel the appellant to
use the 10% profit exclusively for such hospital purposes as
would also be proper public purposes." This statement ig-
nores the very basis of the tax exemption as outlined in
section 214. After providing that to qualify for the exemp-
tion the following conditions must be met: " (2) No part of the
net earnings . . . inures to the benefit of any private share-
holder or individual; (3) the property is used for the actual

operation of the exempt activity; (4) The property is not used or operated . . . so as to benefit any officer, trustee, director, shareholder, member, employee, contributor, or bondholder of the owner or operator, or any other person, through the distribution of profits, payment of excessive charges or compensations or the more advantageous pursuit of their business or profession; (5) The property is not used . . . for fraternal or lodge purposes, or for social club purposes except where such use is clearly incidental to a primary . . . hospital . . . purpose," the Legislature has added "(6) The property is irrevocably dedicated to . . . hospital purposes and upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person except a fund, foundation or corporation organized for . . . hospital . . . purposes."

The combination of these requirements gives legal assurance that the money remitted in taxes for 1953 will be devoted exclusively to hospital purposes. (*Pasadena Hospital Assn.* v. *County of Los Angeles,* 35 Cal.2d 779, 786-787 [221 P.2d 62].)

The legislative determination of the facts upon which the constitutionality of the statute depends is primarily for the Legislature and the courts can only overturn such determination if that determination is clearly erroneous. (11 Cal.Jur. 2d, Constitutional Law, § 77, pp. 411-412; *Id.* § 183, p. 583.) Every reasonable doubt must be resolved in favor of constitutionality. (*Id.* § 78, pp. 412-413.)

"One of the most important fields of regulation under the police power is that of public health and safety." (*Id.* § 158, p. 543.) And the Legislature is free to choose any means that has a reasonable relation to the end sought to be accomplished. (*Id.* § 184, p. 584.)

The Legislature has determined that a public necessity exists for the encouragement of the operation and expansion of nonprofit hospitals and the means that it has chosen by the remission of taxes cannot be said not to be reasonably promotive of those purposes. The cases cited in the majority opinion demonstrate that taxes already a lien may be remitted for a valid public purpose.

I would reverse the judgment.

A petition for a rehearing was denied May 10, 1957. Dooling, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied June 4, 1957. Carter, J., and Spence, J., were of the opinion that the petition should be granted.