[Civ. No. 19302.   First Dist., Div. One.   Jan. 18, 1961.]

DOCTORS GENERAL HOSPITAL OF SAN JOSE (a Non-profit Corporation), Appellant, v. COUNTY OF SANTA CLARA et al., Respondents.

Paul I. Myers, Jr., for Appellant.

Spencer M. Williams, County Counsel, Robert P. McNamee and Joan A. Symon, Deputy County Counsel, Ferdinand P. Palla, City Attorney (San Jose), Harry Kevorkian, Assistant City Attorney, Harold W. Kennedy, County Counsel (Los Angeles), E. Warren McGuire, County Counsel (Marin), Paul B. Baker, District Attorney (Modoc), Robert M. Wash, County Counsel (Fresno), Stephen K. Tamura, County Counsel (Orange), Thomas M. Montgomery, County Counsel (Humboldt), Richard W. Dickenson, County Counsel (San Joaquin), Vern B. Thomas, District Attorney (Santa Barbara), Bruce A. Thompson, District Attorney (Ventura), William H. Card, County Counsel (Santa Cruz), Earl F. Hedlund, District Attorney (Tehama), and William H. Stoffers, County Counsel (Monterey), for Respondents.

BRAY, P. J.—Plaintiff appeals from an adverse judgment.

## QUESTION PRESENTED

Is section 263, Revenue and Taxation Code, as adopted in 1957, providing for cancellation of taxes on hospitals levied in 1956 constitutional?

## RECORD

Plaintiff is a nonprofit corporation which for several years has been operating a hospital in San Jose. Section 214 grants exemption from taxation to property used by a nonprofit corporation exclusively for the purposes therein set forth, one of which is hospital purposes. For a number of years prior to the fiscal year 1956-1957 plaintiff had enjoyed the benefit of such exemption from ad valorem taxation on its property, and admittedly was entitled to exemption for that fiscal year, except for the failure to file the affidavit requesting exemption required by section 254.5 within the time required by that section. Plaintiff filed the affidavit 33 days late. The county assessor took the position that exemption from the state and county and city of San Jose taxes for the fiscal year had been waived by the failure to file the affidavit on time and immediately levied upon plaintiff's property for taxes for the fiscal year 1956-1957. Thereafter plaintiff paid the taxes to the Santa Clara County Tax Collector under protest.

Section 263 was enacted in January 1957, effective February 1. On March 4, 1957, the Board of Supervisors of Santa Clara County approved plaintiff's claim of refund, but on July 29 reversed itself and denied the claim. Plaintiff thereupon instituted this suit. Holding that on the failure of plaintiff to file the affidavit on time, the taxes assessed as of the first Monday of March 1956, became vested in the county and city respectively, and that to cancel those taxes under section 263 would constitute a gift of public money or thing of value prohibited by article IV, section 31, of the Constitution, the superior court granted judgment in favor of defendants.

## CONSTITUTIONALITY OF SECTION 263

At the time in question, that section provided in part: "Any tax, or any penalty or interest thereon, for any fiscal year commencing during the calendar year 1956 on any property of a hospital as to which the welfare exemption was available for such fiscal year shall be canceled pursuant to

Article 1 (commencing with Section 4986) of Chapter 4 of Part 9 of this division as if it had been levied or charged erroneously, and, if paid, a refund thereof shall be made pursuant to Article 1 (commencing with Section 5096) of Chapter 5 of Part 9 of this division as if it had been erroneously collected.''*

It is conceded that if section 263 is constitutional, plaintiff is entitled to a refund of the taxes paid.

Section 260, Revenue and Taxation Code, provided: ''If any person, claiming any exemption named in this article, fails to follow the required procedure, the exemption is waived by the person.''

Plaintiff contends that its right to exemption arose by virtue of its meeting the requirements of section 214, that the requirement of section 254.5 that the affidavit be filed on time was merely a procedural one, and that the effect of the enactment of section 263 was merely the waiver by the state of a procedural bar to the enforcement of a right. Undoubtedly, it is not the filing of the affidavit that creates the right to the exemption, but that right arises from the status of the hospital as a nonprofit corporation. This status existed therefore on the first Monday of March, when the taxes became a lien on plaintiff's property. But by virtue of section 260, plaintiff waived that right of exemption when it failed to file its affidavit on time.

■ ''To waive is to give up, to abandon and relinquish. It leaves the thing abandoned as though it had never been.'' (*Caulfield* v. *Finnegan*, 114 Ala. 39 [21 So. 484].) As said by the trial judge, Honorable Edwin J. Owens, ''It is true that waiver in its ordinary sense implies a voluntary, that is, intentional abandonment and in that sense it may be said that there was no waiver here insofar as the hospital's failure to file the affidavit may have been due to inadvertence rather than intentional. Whether, however, this section be construed to use the term 'waiver' in a broader sense as eliminating

---

*The urgency clause in the statute adopting section 263 (Stats. 1957, ch. 7, p. 554) states that the purpose of the act is to remedy the fact that ''Some hospitals have inadvertently failed to file the required affidavit in support of the welfare exemption which is applicable to their property and, as a consequence, are now confronted with obligations which, if met, will substantially injure their ability to function effectively. This act will remedy the situation by, *in effect, removing the procedural* bar . . . In doing so, it will fulfill the public policy of the State expressed through such exemption and thereby benefit the people generally.'' (Emphasis added.)

the element of intention; whether it be construed as imposing a penalty; or is in the form of an operative condition subsequent terminating the right of the hospital to the exemption, the same conclusion must follow, namely: that, on the failure to file the affidavit on April 1, whether through inadvertence or otherwise, the right of the hospital to the exemption for that year terminated." Thus the lien of the taxes provided by sections 2187, 2188, and 2189, Revenue and Taxation Code, and which attached on the first Monday of March (§ 2192) became due and payable.

The question then is whether section 263 contravenes the prohibition against gifts of public money of section 31 of article IV of the state Constitution.

Section 260 expressly states that failure to follow the required procedure constitutes a waiver of the exemption, so there can be no question that the failure to file the affidavit on time waives the exemption. See *Chesney* v. *Byram,* 15 Cal.2d 460 [101 P.2d 1106], holding that the failure of a veteran to file his claim for exemption on time constituted a waiver by him of his right to such exemption. *Doctors General Hospital* v. *County of Santa Clara;* 150 Cal.App.2d 53 [309 P.2d 501], determines that a tax lien is a vested right of the taxing body. In that case the tax lien for taxes of the year 1953-1954 attached to the plaintiff's property on the first Monday in March, 1953. On May 18 an amendment of section 214, subdivision (3), Revenue and Taxation Code, became effective. Prior to the amendment, section 214 provided that a hospital could not qualify for tax exemption if it made any profit, regardless of the purpose for which the profit was used. The amendment provided, in effect, that as to all taxes levied after January 1, 1953, a hospital making a profit not exceeding 10 per cent of its operating expenses was entitled to the exemption. The majority of the court held that the retroactive aspect of the statute made it unconstitutional for the reason that the tax lien became a vested property right on the first Monday of March, and that the statute attempted unlawfully to make a gift of public money. The minority opinion agreed that the tax lien had vested but stated that the legislative determination of the facts brought the case within the cases cited in the majority opinion holding that taxes already a lien may be remitted for a valid public purpose.

We must assume, therefore, that the tax lien here was a vested property right of the taxing powers. But we are of the

opinion that that fact does not make the cancellation of the taxes an unconstitutional gift of public moneys. Article XIII, section 1c, provides: ". . . the Legislature may exempt from taxation all or any portion of property used exclusively for . . . hospital . . . purposes . . ." Thus, to this extent the Legislature may make a gift of public money, i. e., tax moneys which otherwise would be received by the taxing agency. The exemption of nonprofit hospitals is a well recognized public purpose (*Doctors General Hospital* v. *County of Santa Clara, supra,* 150 Cal.App.2d 53), and the Legislature has declared that to grant the exemption to hospitals which have failed to take a procedural step but were otherwise entitled to the exemption is in the public interest and will fulfill the public policy of the state. ██ "It is a well recognized rule that the courts will not disturb a legislative determination of what constitutes a public purpose, as long as it has reasonable basis." (*Doctors General Hospital* v. *County of Santa Clara, supra,* 150 Cal. App.2d at p. 57.) There can be no doubt that the Legislature in the first instance could have provided the exemption without requiring the procedural step of filing an affidavit, thus allowing the hospital to assert the claim of exemption whenever and wherever there might be need to assert it. Hence, there is no reason why the Legislature could not appropriately retroactively dispense with the requirement of an affidavit.

In *City of Ojai* v. *Chaffee,* 60 Cal.App.2d 54 [140 P.2d 116] it was held that a statute providing for the cancellation of uncollected taxes was not in contravention of article IV, section 31, of the Constitution, because the specific public purpose was to restore the property in question to the tax rolls and make it once more a source of public revenue.

██ In section 263, the Legislature has made no attempt to change, add to, or lessen any of the qualifications provided by the Constitution for exemption by a hospital. It has merely provided that a hospital otherwise qualified for the exemption may be entitled to it without having previously complied with a certain procedural step. Certainly if the Legislature has the power to exempt hospitals of the kind described in the constitutional provision from payment of taxes (and it has), it should likewise have the power to prescribe the time in which such exemption may apply. There is nothing in the constitutional provision which limits the legislative power to grant exemption from taxes assessed but not due or payable or collected.

Applicable here is the language in *City of Oakland* v. *Garrison*, 194 Cal. 298 [228 P. 433], which held that the appropriation by the board of supervisors of moneys of the county of Alameda to the city of Oakland for the improvement of the latter's streets was not a gift prohibited by the Constitution: ". . . this court has pointed out that where the question arises as to whether or not a proposed application of public funds is to be deemed a gift within the meaning of that term as used in the constitution, the primary and fundamental subject of inquiry is as to whether the money is to be used for a public or a private purpose. If it is for a public purpose within the jurisdiction of the appropriating board or body, it is not, generally speaking, to be regarded as a gift." (P. 302.)

In *Bickerdike* v. *State* (1904), 144 Cal. 681 [78 P. 270], it was held that the waiver of the statute of limitations by the Legislature some four years after the statute had run for collecting bounties for killing coyotes was not an unconstitutional act. In *Mitchell* v. *County Sanitation District*, 150 Cal.App.2d 366 [309 P.2d 930], the waiver by the board of directors of the district of the statute of limitations on a claim by a veteran who had failed to present bond interest coupons because of absence overseas was held not to constitute a prohibited gift of public funds.

The situation here is somewhat similar to that in *County of Alameda* v. *Janssen* (1940), 16 Cal.2d 276 [106 P.2d 11, 130 A.L.R. 1141]. There it was contended that the action of the board of supervisors in releasing (pursuant to legislative acts) without consideration a statutory lien previously acquired on certain real property of a recipient of aid provided by the Old Age Security Act and also releasing and cancelling without consideration an agreement by the recipient not to convey or encumber real property, was a gift of public money or thing of value prohibited by article IV, section 31, of the Constitution. The court held, however, that as another clause of section 31 provided that nothing in the section should prevent the Legislature from granting aid to indigent persons, pursuant to section 22, article IV, which authorizes such grants, there was no prohibited gift of public money or thing of value. The court said: "It is well settled that, in determining whether an appropriation of public funds or property is to be considered a gift, the primary question is whether the funds are to be used for a 'public' or a 'private' purpose. If they

are for a 'public purpose,' they are not a gift within the meaning of section 31 of article IV.'' (P. 281.) The court then pointed out that "The determination of what constitutes a public purpose is primarily a matter for legislative discretion" (p. 281), and said, ". . . the legislature seems clearly justified in its belief that the release of liens held against the property of indigent recipients of aid is for the general public welfare." (P. 282.) So in our case the Legislature was clearly justified in its belief that it was for the general public welfare to relieve nonprofit hospitals from their default in not filing their affidavits for exemption on time. Therefore in doing so there was no unlawful gift of public money or thing of value.

If it is necessary to distinguish this case from the majority holding in the Doctors Hospital case, *supra,* that the act extending retroactively the exemption to a hospital which made a profit not exceeding 10 per cent of its operating expenses was unconstitutional, such distinction is that there the amendment attempted to grant retroactively and substantively an exemption where none had existed prior thereto; whereas here the enactment of section 263 made no substantive changes nor granted any exemption that had not theretofore existed but made merely an adjective or procedural change which in effect permitted the hospital to withdraw its waiver of its right of exemption.

In *County of Los Angeles* v. *La Fuente,* 20 Cal.2d 870 [129 P.2d 378], the court, in holding that in granting old age security benefits the Legislature was not violating the constitutional inhibition against gifts of public money, pointed out: "The courts will not disturb a legislative determination of what constitutes a public purpose so long as it has a reasonable basis." (P. 877.) As hereinbefore shown, it is well settled that exemption from taxation of nonprofit hospitals is reasonably in the public interest. This is true whether the exemption is granted before the taxes would otherwise become due and payable, and paid, or thereafter. It is not reasonable to hold that in the first situation exemption is reasonable while in the second it is not reasonable to apply the exemption or refund the taxes.

*California Emp. Stab. Com.* v. *Chichester etc. Co.,* 75 Cal. App.2d 899 [172 P.2d 100], holding that where the statute of limitations has run on the right of the state to collect unemployment insurance taxes from a taxpayer, the Legislature

may not retroactively extend the time for the state to sue for such taxes; *Estate of Taitmeyer*, 60 Cal.App.2d 699 [141 P.2d 504], stating that the Legislature in amending certain sections of the Probate Code did not have the right to divest a wife of vested interests in property; and *Duncan* v. *Torney*, 125 Cal. App. 207 [13 P.2d 765], refusing to apply section 1022, Code of Civil Procedure (denial of costs where amount of judgment recovered in superior court is within jurisdiction of the municipal court) retroactively where there was no municipal court in the county at the time the action was filed in the superior court, are not in point. Those cases all hold that a statute may not operate retroactively so as to affect vested rights. However, none of them deals with a situation such as we have here, namely, that there is a constitutional provision, article XIII, section 1c, which as we have shown, in effect permits vested rights of tax agencies to be affected by the Legislature. The granting of the tax exemption in the first instance is actually a gift of public money or thing of value, yet one which the Constitution expressly permits. The retrospective effect of section 263 is not important. As said in Taitmeyer (p. 709), " 'Neither the federal Constitution nor the Constitution of California prohibits the enactment of retrospective laws' . . ."

It is contended that section 263 violates article IV, section 30, which prohibits the Legislature and other governmental entities from paying or granting from any public fund aid to any religious or sectarian hospital, because section 263 seems broad enough to apply to such hospitals. Inasmuch as plaintiff hospital is not of those types, and as obviously, non-sectarian and nonreligious, nonprofit hospitals are in a different class from the sectarian and religious ones, and the act would be severable as to the former, we need not consider the contention further.

Defendant County of Santa Clara is a subdivision of the state itself and as against the state has no vested property rights. Therefore the county cannot object to the legislative action unless such action violates some constitutional mandate. (See *Reclamation District* v. *Superior Court*, 171 Cal. 672 [154 P. 845], where the court said, "In the absence of constitutional restrictions, the legislature has full control of the property held by the counties as agencies of the state, and may dispose of that property without the consent of the county . . ." (P. 679.)) The only mandate claimed is that

the Legislature may not improperly make a gift of public money or thing of value. As we have shown, this mandate has not been violated.

Defendant city of San Jose contends that as it is a distinct legal entity operating under a freeholder charter with home rule power and is not a subdivision of the state (see *Otis* v. *City of Los Angeles*, 52 Cal.App.2d 605, 612 [126 P.2d 954]), the latter has no power to waive the plaintiff's failure to file the affidavit on time nor to refund taxes as to which the city's rights have vested. The constitutional grant to the Legislature to exempt hospitals from taxation is not limited to state and county taxes. It includes all taxes. Thus it is not contended that the home rule charter would prevail over article XIII, section 1c, nor that the Legislature did not under such provision have the power to exempt nonprofit hospitals from city taxes, thereby, in effect, giving away the city's money or thing of value. As to the right of the Legislature to retroactively set aside a procedural requirement, everything we heretofore have stated (except the statement as to the county being a subdivision of the state) applies to chartered cities.

Moreover, the city of San Jose, by ordinance, availed itself of the provisions of Statutes of 1913, chapter 273, page 499, and acts supplementary thereto, which provide for the assessment and collection by a county of taxes for chartered cities. This statute is sanctioned by section 6, article XI, of the Constitution, and transfers to and consolidates with the county system the taxing functions of the city. Thus, the only basis upon which the city of San Jose acquires any vested right is through the lien of the county. Therefore, for purposes of cancellation and refund of taxes the city is in the same situation as the county. "The transfer to and assumption by the county of the city taxing functions imports a full consolidation and an acceptance by the city of the statutory scheme setting up and regulating the county system. Any other method would hamper the county officers in their execution of city functions. It would also lead to confusion and injustice in dealings with taxpayers, who are confronted with a combined tax roll calling for payment of a single sum covering both county, city and school district taxes, without any inkling of varying rights and regulations of the several entities concerned. The city therefore should not be permitted, by charter and ordinance provisions, to limit the powers and duties of the county in relation to taxpayers. When the city adopted

the county system, and the county officers assumed the city functions, the city must be held to have necessarily accepted the county system, charged with all the incidents thereof created by valid statutory and constitutional provisions applicable to county assessment, collection, and refund of taxes, including the right on the part of the county to make refunds in proper cases without approval of the city, and to defend refund suits, pay judgments, and secure reimbursement under the recoupment provisions incorporated in [Pol. Code] section 3804." (*County of Los Angeles* v. *Superior Court,* 17 Cal.2d 707, 713-714 [112 P.2d 10].)

The judgment is reversed.

Tobriner, J., and Duniway, J., concurred.

A petition for a rehearing was denied February 10, 1961, and respondents' petition for a hearing by the Supreme Court was denied March 15, 1961.