[Civ. No. 43851. Second Dist., Div. Two. Jan. 30, 1975.]

COMMUNITY TELEVISION OF SOUTHERN CALIFORNIA,
Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al.,
Defendants and Appellants.

## COUNSEL

John H. Larson, County Counsel, and Lawrence B. Launer, Deputy County Counsel, for Defendants and Appellants.

Kadison, Pfaelzer, Woodard, Quinn & Rossi, Richard S. Cohen and James Goldman for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—Appellants, County of Los Angeles and City of Los Angeles, appeal from a summary judgment rendered in favor of respondent Community Television of Southern California (KCET) in its action to recover real property taxes paid under protest.

KCET is a nonprofit, charitable corporation which operates an educational television station, and as such is exempt from tax pursuant to section 214 of the Revenue and Taxation Code, which statutory exemption is authorized by article XIII, section 4(b) of the California Constitution.

On July 23, 1970, KCET acquired certain real property located within the County of Los Angeles and the City of Los Angeles. The lien date for taxes on the property for the fiscal year July 1, 1970 to June 30, 1971 was March 1, 1970. (Rev. & Tax. Code, § 2192.) On January 28, 1971,

pursuant to the provisions of section 271.4[1] of the Revenue and Taxation Code, KCET filed a claim for exemption from property taxes on the property for the 1970-1971 tax year.

The assessor of the county denied the claim on the ground that KCET had not complied with the procedure set forth in sections 254, 254.5 and 259.5 of the code. Those sections require that the claim for exemption in the form of an affidavit and financial statement showing that the property owner meets eligibility requirements be filed before March 15 of each year. Revenue and Taxation Code section 260 provides that failure to comply with the required procedure effects a waiver of the exemption. Since KCET had not acquired the property until July 1, 1970, it could not comply with that requirement.

Section 271.4 of the Revenue and Taxation Code, however, provided in part: "When property is acquired after the beginning of any fiscal year by an organization qualified for the . . . welfare exemption and the property is of a kind which would have qualified for an exemption if it had been owned by such organization on the lien date, . . . the tax and any penalty or interest imposed thereon shall be canceled in the proportion that the number of days for which the property was so qualified during the fiscal year bears to 365. . . and, if paid, a refund thereof shall be made . . . as if it had been erroneously collected, if an appropriate application for exemption is made on or before the first day of March of the calendar year next succeeding the calendar year in which the property was acquired."

KCET paid the taxes under protest and commenced this action. The county and city contend that Revenue and Taxation Code section 271.4 is unconstitutional. A stipulation of facts between the parties left the constitutionality of the section as the sole issue to be determined. The trial court in rendering summary judgment in favor of KCET held the section to be constitutional.

Appellants first contend that section 271.4 is unconstitutional and void for the reason that it acts to deprive them of their vested interests in the taxes which were assessed and which became a lien on the property on March 1, 1970, at a time when the property was not exempt from taxation, and that a prorata forgiveness of taxes pursuant to section 271.4

[1]Now section 271, subdivision (a) (3) of the Revenue and Taxation Code.

is an unconstitutional gift of public monies in violation of article XVI, section 6 of the California Constitution.

Appellants' contention regarding a tax lien as a vested right of a taxing agency subject to protection by the courts in essence would serve to deny the right of the Legislature to provide for a forgiveness of taxes once assessed. It would prevent the Legislature from recognizing, as it did in section 271.4, that if a tax ought not to be levied on a charitable organization then it should not be levied even if the organization is unable for any valid reason to comply with the procedural steps to establish the exemption. We perceive section 271.4 as legislative recognition that the need for the exemption is of greater import than the procedural method of achieving it.

In *Doctors General Hospital* v. *County of Santa Clara,* 188 Cal.App.2d 280 [10 Cal.Rptr. 423], the court determined that Revenue and Taxation Code section 263[2] was constitutional as against an attack similar to that made here against Revenue and Taxation Code section 271.4. There the hospital was qualified for an exemption but filed the affidavit required by Revenue and Taxation Code section 254.5, 33 days late.

The court recognized that even though the exemption from taxes had not been filed according to statute the Legislature could have constitutionally waived such procedural requirements in the first instance. In brief, the court looked to the substance which consisted of the basic eligibility of the organization to receive the exemption rather than paying slavish adherence to the administrative means by which the organization would have to prove its eligibility, and stated at page 283: "Undoubtedly, it is not the filing of the affidavit that creates the right to the exemption, but *that right arises from the status of the hospital as a nonprofit corporation.*" (Italics added.)

Appellants point out that in *Doctors General Hospital* v. *County of Santa Clara, supra,* the exempt status of both the land and its owner

---

[2]Revenue and Taxation Code section 263, now repealed, provided: "Any tax or any penalty or interest thereon for any fiscal year commencing during the calendar year 1956, 1957 or 1958 on any property of a hospital as to which the welfare exemption was available for such fiscal year shall be canceled pursuant to Article 1 (commencing with Section 4986) of Chapter 4 of Part 9 of this division as if it had been levied or charged erroneously, and, if paid, a refund thereof shall be made pursuant to Article 1 (commencing with Section 5096) of Chapter 5 of Part 9 of this division as if it had been erroneously collected."

existed prior to the lien date and while conceding the power of the Legislature to provide for exemptions from taxation (Cal. Const., art. XIII, § 4(b)) they contend that the exemption must always operate prospectively, citing *Estate of Stanford,* 126 Cal. 112 [52 P. 259, 58 P. 462].

*Estate of Stanford* dealt with a statutory exemption from inheritance tax, which statute was enacted after the death of the deceased, the point at which the inheritance tax was due and payable. In the case at bar, Revenue and Taxation Code section 271.4 was enacted prior to the date KCET acquired the property in question and prior to the lien date. Further, the taxes here were not due and payable until November 1, 1970, for the first half, and February 1, 1971 for the second half. (Rev. & Tax. Code, §§ 2605, 2606.) Thus *Stanford* is factually distinguishable.

Revenue and Taxation Code section 214, which creates the "welfare exemption" from taxation for specifically described types of organizations, is a legislative recognition of the public benefit which flows from such organizations and the public purpose served by freeing the property of such organizations from the burden of property tax. The limitations contained therein presumptively assure that the money thus freed for use by the organization will be put to a public purpose. Thus, contrary to appellants' contention, if the Legislature can constitutionally permit application of the exemption to property acquired after the March 1 lien date, as it attempted to do by enactment of Revenue and Taxation Code section 271.4, no further specification of the use to which the money which otherwise would be paid in taxes may be put, is necessary to save the section from attack.

■ That the Legislature has the power to reasonably regulate the implementation of even a constitutionally created exemption is not debatable. (*Chesney* v. *Byram,* 15 Cal.2d 460 [101 P.2d 1106].) Such a regulation is to be found in Revenue and Taxation Code sections 254, 254.5, 259.5 and 260 requiring the filing of an affidavit and financial statement as a condition precedent to establishing the exemption.

Revenue and Taxation Code section 254.5, which requires the affidavit and financial statement to be filed prior to the March 15 preceding the taxable year, a section upon which appellants rely and the validity of which they do not assail, points up the fact that the imposition of the lien

on March 1 is not the critical and irrevocable event which appellants contend it is.

We assume that appellants would not contend that the exemption would be inapplicable to property acquired by an exempt organization on March 2 of any year so long as the affidavit and financial statement required by Revenue and Taxation Code section 254.5 was filed by March 15 of the year. Yet compliance with Revenue and Taxation Code section 254.5, after March 1 and before March 15, results in a retroactive waiver or extinguishment of the lien and to that extent, according to appellants' argument, is a remission of taxes.

Revenue and Taxation Code section 271.4 appears simply to be an alternative method to section 254.5 for effecting the exemption where property is acquired after the date provided in the latter section and in such situation establishes March 1 of the following calendar year as the date for filing the requisite documents and establishing eligibility. The Legislature's power to create the exemption includes its power to provide for such a procedural device. Alternatively, the Legislature could have waived entirely the requirement of filing the affidavit and financial statement in any case. *(Doctors General Hospital* v. *County of Santa Clara, supra.)*

Appellants argue that the Legislature is authorized by the Constitution to create only "exemptions" which necessarily operate prospectively and that section 271.4 is an unauthorized "remission" of taxes. As we noted above such argument would apply with equal force to section 254.5 upon which appellants rely in denying the exemption to KCET. More importantly, however, while we agree with appellants that "a remission of taxes is invalid under the Constitution of this state . . .," *(County of San Bernardino* v. *Way,* 18 Cal.2d 647, at p. 655 [117 P.2d 354]) we do not view 271.4 as a "remission," "which term implies forgiveness or voluntary relinquishment of a claim, or part thereof, *without any consideration therefor.*" (Italics added.)

Article XVI, section 6 of the California Constitution prohibits the Legislature from making a gift of public funds or property and of course a tax lien is public property. A transfer of property without consideration is a gift. (Civ. Code, § 1146.) Release of the tax lien *without consideration* would violate the constitutional prohibition.

In *County of Alameda* v. *Janssen,* 16 Cal.2d 276 [106 P.2d 11, 130 A.L.R. 1141], the California Supreme Court upheld the Legislature's release of liens previously created against the property of certain welfare recipients, stating at page 281: "It is well settled that, in determining whether an appropriation of public funds or property is to be considered a gift, the primary question is whether the funds are to be used for a 'public' or a 'private' purpose. If they are for a 'public purpose,' they are not a gift within the meaning of section 31 of article IV [now art. XVI, § 6]. [Citations.] *The benefit to the state from an expenditure for a 'public purpose' is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefited therefrom.*" (Italics added.) (Also see *California Emp. etc. Com.* v. *Payne,* 31 Cal.2d 210 [187 P.2d 702].)

Appellants point to selected cases as examples of challenged appropriations which have been found by the courts to be for public purpose. In *City of Oakland* v. *Garrison,* 194 Cal. 298 [228 P. 433], the funds appropriated by the county to the city were required to be used for paving a certain road which paving had been found by the county to be of general interest to the county. In *Redevelopment Agency* v. *Hayes,* 122 Cal.App.2d 777 [266 P.2d 105], the appropriated monies were to be expended for slum clearance and area improvements, and in *Simpson* v. *City of Los Angeles,* 40 Cal.2d 271 [253 P.2d 464], the surrender of impounded dogs to medical research was also held not to be a gift of public funds because of the public value of the research. Inferentially, appellants suggest that production of educational television programs does not have the value to the public which was found to exist in the above cited examples.

We need not speculate as to how high education ranks on the scale of public value or purpose in comparison to the paving of roads, slum clearance or vivisection. We are satisfied that public educational television serves a vital public purpose. It is just possible that educational television programs might, in the long run, be of greater value than a road.

In any event, the determination of what is a "public purpose" in the appropriation and expenditure of public funds "is primarily a matter for legislative discretion [citations], which is not disturbed by the courts so long as it has a reasonable basis." (*County of Alameda* v. *Janssen, supra,* at p. 281.)

■ Revenue and Taxation Code section 271.4 draws its "public purpose" from the creation of the exemption in Revenue and Taxation Code section 214. Beyond that the Legislature in enacting section 271.4 as a "urgency" measure specifically declared that the statute was necessary to serve a vital public purpose.[3] We cannot disagree.

■ Appellants' contention that section 271.4 is unconstitutional as a violation of the equal protection clauses of the federal and state Constitutions is based upon the argument that singling out an exempt organization for exemption from tax on later acquired property in the manner of section 271.4 is an illogical classification of property. It is argued this would discriminate against both a charitable organization in existence on the lien date but not using the property for charitable purposes and an organization not organized as a charitable organization on the lien date even though it was using the property in a way which would qualify the organization as a tax exempt organization.

We need not dwell long on this argument since the appellants are in no position to raise the issue. As a political subdivision of the state and not being parties who belong to a class allegedly discriminated against they lack the standing to make such a challenge. (*City of New York* v. *Richardson,* 473 F.2d 923; *Data Processing Service* v. *Camp,* 397 U.S. 150 [25 L.Ed.2d 184, 90 S.Ct. 827]; *Flast* v. *Cohen,* 392 U.S. 83 [20 L.Ed.2d 947, 88 S.Ct. 1942]; *Harman* v. *City and County of San Francisco,* 7 Cal.3d 150 [101 Cal.Rptr. 880, 496 P.2d 1248].)

The judgment is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 26, 1975.

---

[3] "This act is an urgency statute, necessary for the immediate preservation of the public peace, health or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are:

"Some organizations qualified for the . . . exemption pursuant to . . . the Revenue and Taxation Code purchased property during the 1968 calendar year, after the lien date for that year, which property was taxed for the fiscal year 1968-69, although it would have been exempt from taxation for that year by reason of the . . . exemption had it been acquired prior to such lien date. If required to meet such tax obligation, the ability of such organizations to function effectively will be seriously impaired to the great detriment of our state. This act will remedy that situation, and in so doing, the public policy of the state for the exemption of property owned by . . . organizations, as expressed in . . . the Constitution, will be subserved and the state as a whole will benefit." (Stats. 1969, ch. 88, § 4.)